SAUNDERS PROPERTIES, a Partnership, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, a Municipal corporation, and Tom Fink, in his official capacity of mayor of the Municipality of Anchorage, Appellees.

No. S–4875.

Supreme Court of Alaska.

Feb. 12, 1993.

---

Richard H. Foley, Jr. and Pamela R. Kelley, Foley & Foley, Anchorage, for appellant.

Scott A. Brandt–Erichsen, Asst. Mun. Atty., and Richard L. McVeigh, Mun. Atty., Anchorage, for appellees.

Before RABINOWITZ, C.J., and
BURKE, COMPTON and MOORE, JJ.

### OPINION

MOORE, Justice.

### I. INTRODUCTION

Saunders Properties (SP) appeals the superior court's ruling that the one-year statute of limitations set out in AS 29.45.500(b) applies to limit the Anchorage Assembly's authority to refund tax overpayments under AS 29.45.500(c). We conclude that the Assembly has the discretionary authority to award refunds under subsection (c) without any prescribed limitations period. We also hold that such quasi-judicial decisions are not subject to mayoral veto. The Assembly erred, however, in failing to award interest on the taxes refunded.

### II. FACTS AND PROCEEDINGS

The facts of this case are not disputed. In 1979 the Municipality of Anchorage (municipality) took a right-of-way totalling 43,-800 square feet from two parcels owned by SP. In April 1980 the Municipal Assessor's office adjusted the assessment records to reflect the decreased square footage of SP's property following the taking.

In June 1980 SP's property was replatted to subdivide the lot into two separate parcels (Tracts A and B). When the plat was refiled, the Municipal Assessor's office mistakenly included the land taken for the right-of-way in its assessment, thus overstating the size of both lots. From 1981 to 1988, both tracts were overtaxed as a result of this error.[1]

In 1989 the Municipal Assessor's office discovered the error and adjusted the 1989 tax assessment. SP subsequently requested a tax refund of the amounts overpaid on the two tracts between 1981 and 1988. Alaska Statute 29.45.500 provides:

(a) If a taxpayer pays taxes under protest, the taxpayer may bring suit in the superior court against the municipality for recovery of the taxes. If judgment for recovery is given against the municipality, or, if in the absence of suit, it becomes obvious to the governing body that judgment for recovery of the taxes would be obtained if legal proceedings were brought, the municipality shall refund the amount of the taxes to the taxpayer with interest at eight percent from the date of payment plus costs.

(b) If, in payment of taxes legally imposed, a remittance by a taxpayer through error or otherwise exceeds the amount due, and the municipality, on audit of the account in question, is satisfied that this is the case, the municipality shall refund the excess to the taxpayer with interest at eight percent from the date of payment. A claim for refund filed one year after the due date of the tax is forever barred.

(c) The governing body may correct manifest clerical errors at anytime.

Pursuant to AS 29.45.500(b), the Municipal Assessor's office agreed to refund SP the amount overpaid on Tract B for the 1988 tax year ($5,031.98),[2] but refused to refund SP any of the tax overpaid in earlier years, citing the statutory provision's one-year time limit. However, the Municipal Assessor's office indicated that the Assembly might have the authority to make such a refund under AS 29.45.500(c).

In April 1990 SP appeared before the Assembly and requested a refund pursuant to AS 29.45.500(c). The mayor subsequently entered a written opposition to SP's request, arguing that a property owner has a duty to check the assessment each year and that allowing refunds for past years would disrupt the municipal budget.

---

1. SP was not the record owner of Tract A throughout this entire period. In 1981 SP sold Tract A to Bykers, Inc. In 1986 Bykers, Inc. defaulted on its obligation to SP and subsequently reconveyed Tract A to SP in a foreclosure action. Since 1989, SP has been the record owner of both parcels.

2. Apparently no excess taxes were paid on Tract A in 1988, and therefore SP did not request a refund for that lot.

In early May the Assembly voted 6 to 4 to grant SP a refund in the amount of $32,957.[3] The Assembly specified that this amount represented only the amount overpaid and did not include interest. A few days later Mayor Tom Fink vetoed the Assembly action. On May 22, 1990, the Assembly addressed the issue of Mayor Fink's veto. Although a number of Assembly members voiced doubts as to whether the mayor had authority to veto the Assembly's decision, the Assembly followed the normal procedures to override the veto. The Assembly voted seven to four to override, one short of the eight votes necessary. Consequently, the override attempt failed, and the Assembly denied SP's request.

SP appealed the Assembly's decision to the superior court, seeking to recover the amount it had actually overpaid in taxes for a total of $17,781.58. On cross-motions for summary judgment, Superior Court Judge Mark Rowland ruled in favor of the municipality and dismissed SP's case. This appeal followed.

## III. DISCUSSION

### A. *Interpretation of AS 29.45.500(c)*

■■■ The legislature enacted subsection (c) in 1985 when it recodified former AS 29.53.390 as AS 29.45.500. Unfortunately, the legislative history sheds no light as to the specific purpose of this subsection. We must therefore examine the plain language of AS 29.45.500(c) in light of its overall purpose and in accordance with common sense and good policy.[4] *See*

*Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

Subsections (a) and (b) set forth two different procedures under which a taxpayer may obtain a tax refund. Under subsection (a), a taxpayer may bring a suit against the municipality in superior court to seek a refund of taxes paid under protest. Under subsection (b), a taxpayer may file a claim for a refund with the municipality when "in payment of taxes legally imposed, [the] remittance by [the] taxpayer through error or otherwise exceeds the amount due." AS 29.45.500(b). A claim under subsection (b) must be filed within one year of the tax due date or it is "forever barred." *Id.*

Subsection (c) provides that the "governing body may correct manifest clerical errors at any time" but does not specifically authorize the refund of taxes overpaid as the result of such an error.[5] AS 29.45.500(c). Judge Rowland construed subsection (c) to "empower the Assembly to correct clerical errors, regardless of how ancient they may be," but ruled that it did not empower the Assembly to refund money erroneously paid as a result of such errors after the one-year limitations period had run. The municipality urges us to adopt this reading and claims that interpreting AS 29.45.500(c) as providing an adjudicatory avenue for relief would negate the one-year limitation in AS 29.45.500(b). We disagree.

■■■ In our view, the one-year limitations period should only apply to overpayments resulting from *taxpayer error* and not to overpayments resulting from the

---

3. This figure represents $13,533.28 in overpaid taxes for Tract A and $19,422.98 for Tract B. However, Bykers, Inc. paid the taxes on Tract A between 1981 and 1986 (paying $10,142.70 in overpayments). The Assembly apparently decided to award SP all $32,956.26 under the mistaken assumption that Bykers, Inc. had failed to pay the property taxes on Tract A during its ownership and that SP had paid the taxes owed when Tract A went into foreclosure. SP never requested that the Assembly award it the full amount. Thus SP is only entitled to the $3,390.58 it actually overpaid on Tract A.

4. It is within the special competency of this court to independently construe a statute. *O'Callaghan v. State,* 826 P.2d 1132, 1134 n. 2 (Alaska 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 176, 121 L.Ed.2d 122 (1992). The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 905 (Alaska 1987).

5. Although the entire section AS 29.45.500 is under the section heading "Refund of Taxes," AS 01.05.006 provides that section headings are not adopted as law in Alaska.

*municipality's error.*[6] In cases of taxpayer error, taxpayers who discover their own mistake and make a timely claim are entitled to an *automatic* refund once the overpayment is verified by audit. We believe that this one-year limitations period makes good sense when the taxpayer is solely responsible for the overpayment.

▆ In contrast, we believe that the language of subsection (c) clearly grants the governing body the *discretionary* authority to correct clerical errors by the municipality and to refund overpayments resulting from such clerical errors without any prescribed limitations period. This reading accords with this court's policy to liberally construe remedial statutes. *See State ex rel. Smith v. Tyonek Lumber, Inc.*, 680 P.2d 1148, 1157 (Alaska 1984). General principles of equity also support this reading. *See Frost v. Fowlerton Consol. Sch. Dist. No. 1*, 111 S.W.2d 754, 756–57 (Tex.App.1937) (holding that school district had no equitable right to retain moneys paid by taxpayer under mutual mistake of fact); *State ex rel. Pabst Brewing Co. v. Kotecki*, 163 Wis. 101, 157 N.W. 559, 560 (1916) (permitting taxpayer to recover tax overpayment resulting from clerical error, and declaring that if the city kept the money, a breach of honesty and fair dealing would result). This is particularly true where the error lies with the taxing body. *See Pabst*, 157 N.W. at 660 (payment of excess tax due to error by city constitutes a "fraud" which entitles taxpayer to recover the overpayment); *Betz v. City of New York*, 119 A.D. 91, 103 N.Y.S. 886, 887 (1907) (where mistake originates with city official resulting in tax overpayment, it is wholly unjustifiable for the city to retain the excess tax). These fairness concerns outweigh the municipality's interest in administrative convenience.

We therefore decline to rule that the limitations period in subsection (b) applies generally to all claims for refunds under AS 29.45.500.[7]

## B. *Applicability of Mayoral Veto*

▆ Because we conclude that the Assembly had the authority to grant SP a refund, we must determine whether the mayor had the power to veto this decision. Under the Anchorage Municipal Charter, the mayor "may, by veto, strike or reduce items in a budget or appropriation measure." Anchorage Municipal Charter § 5.02(c); *see also* AMC 3.20.020(C). The Anchorage Municipal Code provides:

> No payment shall be made or obligation incurred except in accordance with appropriations. Obligations otherwise in-

---

6. We emphasize that neither subsection (b) nor subsection (c) applies to situations in which a taxpayer alleges that the municipality erred in imposing an illegal tax or in improperly valuing the property. In such cases, the taxpayer must follow the prescribed procedures for appealing tax assessments, *see* AS 29.45.190–.200 and AMC 12.05.050, or pay the taxes under protest pursuant to subsection (a).

   We are unpersuaded by the municipality's argument that the assessment error in this case is a valuation error rather than a clerical error. In general, clerical errors are bookkeeping and copying errors. *See Ryan v. Tracy*, 6 Ohio St.3d 363, 453 N.E.2d 661, 663 n. 4 (1983). In this case, the Assessor's office mistakenly used the wrong figure in calculating the taxable square footage when the subject property was replatted.

7. We have held that common law actions to recover taxes paid under protest are subject to a six-year limitations period. *See State v. Wakefield Fisheries, Inc.*, 495 P.2d 166, 172 (Alaska 1972) (six-year statute of limitations applies to common law actions to recover taxes paid un-

der protest), *overruled on other grounds by Principal Mutual Life Ins. Co. v. State, Div. of Ins.*, 780 P.2d 1023, 1030–31 (Alaska 1989).

   As the municipality points out, this conflicts with our recent observation, in dicta, that the one-year limitations period in AS 29.45.500(b) also applies to actions under AS 29.45.500(a). *Kenai Peninsula Borough v. Cook Inlet Region, Inc.*, 807 P.2d 487, 492 (Alaska 1991). *Kenai Peninsula* did not actually involve an application of subsection (a). We held in *Kenai Peninsula* that a taxpayer who failed to make a timely protest under a local ordinance could not later assert that the property was exempt from taxation and obtain a refund. After scrutinizing the language and purpose of AS 29.45.500, we are convinced that our comment concerning the application of the one-year limitations period to subsection (a) was incorrect. However, that inaccurate dicta in no way disturbs our holding in *Kenai Peninsula*. Actions to recover taxes paid under protest, both under subsection (a) and at common law, require a formal protest at the time of payment. *See Principal Mutual Life*, 780 P.2d at 1030–31.

curred are void. The Assembly by ordinance may provide for exceptions in the case of tax refunds and other routine payments.

AMC 6.30.010(A); *see also* Anchorage Municipal Charter § 13.08(a).

SP argues that the Assembly's decision to grant SP a refund is not subject to veto because it is a quasi-judicial action. We agree. The Assembly clearly performed an adjudicatory function here. After SP presented its case before the Assembly and the mayor's office presented its opposing view, the Assembly determined that SP was entitled to a full refund without interest. We have repeatedly held that a legislative body which applies general policy to specific individuals acts as an "administrative agency." *See Kollodge v. State,* 757 P.2d 1028, 1033 (Alaska 1988); *Winegardner v. Greater Anchorage Area Borough,* 534 P.2d 541, 544 (Alaska 1975); *Keiner v. City of Anchorage,* 378 P.2d 406, 410 (Alaska 1963).

 In our opinion, the Assembly's decision is analogous to an adverse judgment against the municipality. A judgment debt is intrinsically different from obligations a municipality incurs in the course of "doing business" as a municipality.[8] Clearly when a taxpayer prevails in a suit to recover taxes paid under protest under subsection (a), the mayor has no authority to veto the court's decision to order a refund. We conclude that such quasi-judicial decisions by the Municipal Assembly are not subject to mayoral veto.[9] *See* 5 Eugene McQuillin,

*The Law of Municipal Corporations,* § 16.42 at 240 (3d ed. rev. vol. 1989).

### C. *Interest*

■■■ Because subsection (c), unlike subsections (a) and (b), does not specifically authorize the Assembly to award interest on the amount refunded, the Assembly concluded that it had the discretion not to award interest.[10] Taking AS 29.45.500 as a whole, we conclude that SP is entitled to 8% interest on its refund award.[11] To hold otherwise would have the inequitable result of singling out the taxpayer who, in good faith, pays excess taxes as a result of a clerical error by the municipality. We therefore hold that all refunds authorized under AS 29.45.500 properly include interest at 8% accruing from the date of payment. *See City of Anchorage v. Scavenius,* 539 P.2d 1169, 1174 (Alaska 1975) (in construing a statute, the court must reconcile the different provisions so as to make them consistent, harmonious and sensible). We remand this case to the superior court with directions to order the appropriate refund plus 8% interest from the date of payment.

REVERSED and REMANDED for proceedings consistent with this opinion.

MATTHEWS, J., not participating.

---

**8.** *See, e.g., Village of Chefornak v. Hooper Bay Constr. Co.,* 758 P.2d 1266, 1268–70 (Alaska 1988) (holding that judgment against City did not constitute a "debt contracted" within constitutional restrictions on debts contracted by a political subdivision); *see also Frost v. Fowlerton Consol. Sch. Dist. No. 1,* 111 S.W.2d 754, 757 (Tex.App.1937) (holding that a claimed tax refund did not "create" a debt against the school district, but rather it was a renewal and extension of a pre-existing debt and therefore not subject to the constitutional provisions limiting the school district's power to contract debts).

**9.** If the municipality refuses to satisfy such a judgment, the taxpayer may seek to enforce the judgment through a motion for mandamus. *See Village of Chefornak,* 758 P.2d at 1268 (recogniz-

ing motion for mandamus to compel payment by municipal judgment debtor).

**10.** We will review the Assembly's interpretation of AS 29.45.500(c) under the substitution of judgment test. *See Jager v. State,* 537 P.2d 1100, 1107 n. 23 (Alaska 1975) (this court will apply the substitution of judgment test for questions of law not involving agency expertise).

**11.** As the municipality points out, the Assembly clearly erred in awarding SP not only the amount SP overpaid in taxes between 1981 and 1988, but also the amount that Bykers, Inc. overpaid during its ownership of Tract A. SP is only entitled to the amount that it actually overpaid during this period.