**KENAI PENINSULA BOROUGH,**
Appellant,

v.

**PORT GRAHAM CORPORATION,**
Appellee.

No. S–4910.

Supreme Court of Alaska.

April 8, 1994.

Gerald L. Sharp, Preston, Thorgrimson, Shidler, Gates & Ellis, Anchorage, for appellant.

Samuel J. Fortier, Fortier & Mikko, P.C., Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

*OPINION*

MATTHEWS, Justice.

The Kenai Peninsula Borough appeals from a judgment awarded by the superior court in favor of Port Graham Corporation requiring the Borough to refund taxes paid under protest by Port Graham on forty-one parcels of property for the tax years 1984–1988. In addition, the Borough appeals from the superior court's award of costs and attorney's fees in favor of Port Graham.

Port Graham is a village corporation authorized under the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. §§ 1601–1629e (1988). Lands conveyed to village corporations under ANCSA are exempt from real property taxation if they are not "developed or leased to third parties." 43 U.S.C. § 1620(d)(1). As a part of its land entitlement under ANCSA, Port Graham received land that had been tentatively approved by the Secretary of the Interior for conveyance to the State of Alaska and concerning which the State had entered into a timber sale contract with Southcentral Timber Development, Inc. Although the record is sparse as to subsequent dealings between Port Graham and Southcentral, it does appear that on May 2, 1981, Port Graham entered into a timber sale contract with Southcentral covering some of the parcels in question, and that on January 11, 1983, this contract was rescinded because storm damage to an important road made further performance impossible.

For the tax years 1984–1988, Port Graham paid its real estate taxes to the Borough under protest.[1] With one exception in 1984, each check was marked "Payment under Protest." The checks did not explain the basis for the protest, nor did they list the tax parcels for which the protest was made.

On April 8, 1985, a representative of Port Graham wrote the assessor of the Borough claiming that thirteen parcels were exempt from taxation because no development had taken place, and no timber had ever been cut from them. The letter stated: "[I]f we can't resolve this between the two of us then I will request a hearing before the Board of Equalization." Port Graham's request was honored, and the thirteen parcels were removed from the tax roll from 1984 through 1988. In April 1988, the Borough requested information from Port Graham concerning its logging activities. Although Port Graham's response is not in the record, it apparently caused the Borough to remove the remaining twenty-eight parcels in question from the tax roll.

Port Graham then demanded a refund of all taxes paid on the parcels from 1980–1988. The Borough denied the claim for 1980–1987. For 1988, the Borough promised to refund any taxes on the parcels in question. A refund was never given, however, apparently because of continuing questions as to allocation of the 1988 payment between exempt and non-exempt property.

Port Graham filed a complaint in the superior court on May 23, 1990, seeking a refund of taxes for the years "1980–1989." The issue was joined and Port Graham moved for partial summary judgment as to all forty-one parcels for a refund of taxes paid for the five years 1984–1988. The motion was supported by an affidavit of Patrick Norman, President of Port Graham. Norman's affidavit attached a recision agreement between Port

---

1. It appears that most of the property in question was placed on the tax roll in 1977. Port Graham appealed this administratively in 1977 on the ground that the property was exempt under ANCSA. The Board of Equalization minutes concerning the appeal read as follows: "No one appeared at the hearing. The assessor had been advised [that] the appellant would withdraw the protest, but no letter of formal withdrawal was received by [the] hearing date." Port Graham's appeal was then denied.

Graham and Southcentral Timber dated January 11, 1983. Norman averred that from 1980 through 1988, Port Graham "has neither developed nor leased any of the parcels sought to be taxed...."

The Borough filed a cross motion for summary judgment and opposition to Port Graham's motion for partial summary judgment. The Borough's opposition was in part factual and in part legal. Most importantly for the purposes of this appeal, the Borough argued that the claim was barred by the applicable statute of limitations.

The trial court granted Port Graham's motion for partial summary judgment, ruling that the six-year statute contained in AS 09.10.050 applied to suits for refunds of borough taxes, and that no genuine issues of material fact existed pertaining to whether on-going logging activity occurred during the period 1984–1988. Subsequently, the court granted Port Graham costs and attorney's fees based on a fully compensatory norm under AS 29.45.500(a), amounting to $10,-216.46 for services prior to and during litigation.

On appeal, the Borough contends as follows:

1. Genuine issues of material fact exist which should have precluded summary judgment;

2. The six-year statute of limitations does not apply, and either the one-year period prescribed in AS 29.45.500(b) or the two-year period of limitations applicable to liabilities created by statute contained in AS 09.10.070 applies;

3. The suit should have been dismissed for failure to exhaust administrative remedies and for failure to file a timely administrative appeal; and

4. The award of costs and attorney's fees was improper.

We conclude that the two-year statute of limitations applies to this case and bars the claims for back taxes for 1984 through 1987.

Judgment on Port Graham's claim for refund of 1988 taxes is affirmed. The award of costs and attorney's fees is vacated and remanded for recalculation. However, we agree that AS 29.45.500(a) authorizes attorney's fees on a fully compensatory basis for services prior to and during litigation. The other issues are mooted.

I. *STATUTE OF LIMITATIONS ISSUES*

The six-year statute of limitations that the trial court applied to this case is expressed in AS 09.10.050:

> **Actions to be brought in six years.** No person may bring an action (1) upon a contract or liability, express or implied, excepting those mentioned in AS 09.10.040 or AS 09.10.055; (2) for waste or trespass upon real property; or (3) for taking, detaining, or injuring personal property, including an action for its specific recovery, except those mentioned in AS 09.10.055; unless commenced within six years.

The one-year statute that the Borough contends should govern this case is contained in AS 29.45.500(b). We set forth both AS 29.-45.500(a) and (b) at this point.

> **Refund of taxes.** (a) If a taxpayer pays taxes under protest, the taxpayer may bring suit in the superior court against the municipality for recovery of the taxes. If judgment for recovery is given against the municipality, or, if in the absence of suit, it becomes obvious to the governing body that judgment for recovery of the taxes would be obtained if legal proceedings were brought, the municipality shall refund the amount of the taxes to the taxpayer with interest at eight percent from the date of payment plus costs.
>
> (b) If, in payment of taxes legally imposed, a remittance by a taxpayer through error or otherwise exceeds the amount due, and the municipality, on audit of the account in question, is satisfied that this is the case, the municipality shall refund the excess to the taxpayer with interest at eight percent from the date of payment.

A claim for refund filed one year after the due date of the tax is forever barred.

The two-year statute which forms the basis of the Borough's alternative argument is expressed in AS 09.10.070:

**Actions to be brought in two years.** No person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise; (2) upon a statute for a forfeiture or penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; unless commenced within two years.

A. *The One–Year Statute Does Not Apply*

■ In *Kenai Peninsula Borough v. Cook Inlet Region, Inc.*, 807 P.2d 487, 492 (Alaska 1991), we stated that AS 29.45.500(b) barred actions to obtain tax refunds if such actions were not brought within one year after the due date of the tax. Subsequently, in *Saunders Properties v. Municipality of Anchorage*, 846 P.2d 135, 139 n. 7 (Alaska 1993), we disapproved of this statement:

After scrutinizing the language and purpose of AS 29.45.500, we are convinced that our comment concerning the application of the one-year limitations period to subsection (a) was incorrect. However, that inaccurate dicta in no way disturbs our holding in *Kenai Peninsula.*

We adhere to the position that we took in *Saunders Properties.* Structurally, subsections (a) and (b) of AS 29.45.500 speak to separate, though in some cases overlapping, situations. Subsection (b) is exclusively concerned with overpayment of taxes that are otherwise legally imposed. Subsection (a), on the other hand, speaks to the taxpayer's payment of taxes under protest. Protested tax payments may include taxes that are legally imposed but excessive, and they may include taxes that are claimed to have been illegally imposed. The one-year period set forth in sub-section (b) applies only to the narrower category of cases where taxes are legally imposed but claimed to be excessive. It does not apply to cases such as the present one, where the claim is that taxation is illegal because the property is exempt.

■ Further, the one-year period expressed in subsection (b) is not a statute of limitations governing the time for the commencement of a lawsuit in court. Instead, it pertains to the time for presentation of a claim for a tax refund to the municipality. As the trial court observed, "claim," as used in subsection (b), is a term traditionally used in referring to the initial administrative stage. *See e.g.,* AS 29.45.480; § 3 ch. 135 SLA 1957. By contrast, most statutes of limitations refer to an "action." *E.g.,* AS 09.10.050; 09.10.070.

■ The predecessor to subsection (b) was AS 29.30.040, enacted as § 3 ch. 135 SLA 1957. The final sentence of that section stated: "A claim for refund not filed *with the political subdivision* within three years after the due date of the tax is forever barred." (Emphasis added.) This was recodified and the period was shortened to one year in 1972 as part of the comprehensive revision of the statutes pertaining to municipalities. The deletion of the clause "with the political subdivision" appears to be technical in nature and not indicative of an intent to make a substantive change. *See* Conference Committee Report, Senate Journal, 1972.2 at 1042. We conclude that the language of section 500(b) refers now to what it did when the statute was first enacted in 1957: presentation of a claim for refund to the taxing authority.

B. *The Six–Year Statute Does Not Apply*

■ We ruled in *State v. Wakefield Fisheries, Inc.*, 495 P.2d 166 (Alaska 1972), that taxpayers had a cause of action at common law to recover overpayment of taxes even though a statutory remedy for overpayment existed. The consequence of this ruling was that the six-year statute of limitations for

actions to recover personal property under AS 09.10.050 applied rather than the two-year statute of limitations for liabilities created by statute expressed in AS 09.10.070. We stated:

> We cannot agree that the taxpayer is limited to recovery according to the statutory provision, AS 43.15.010 [requiring payment under protest of taxes due the state as a condition of refund suit]. The common law has long recognized a cause of action in assumpsit to recover overpayment of taxes. Because the statutory remedies do not explicitly supersede the common-law remedies, we conclude that they are intended as a supplement, and that the earlier remedy in assumpsit is still available. Hence the claim for a refund was timely under the six-year statute of limitations applicable to recovery of personal property.

495 P.2d at 172 (footnote omitted).

In *Principal Mutual Life Ins. Co. v. State, Division of Insurance*, 780 P.2d 1023, 1030 (Alaska 1989), we overruled one aspect of *Wakefield* and cast doubt on the above conclusion:

> [W]e now question whether the common law remedy of a cause of action in assumpsit survived the enactment of AS 43.15.010 . . . .

In our view, our statement in *Principal* concerning the *Wakefield* holding was well advised, and we continue to believe that this aspect of *Wakefield* was wrongly decided. Speaking generally, statutes reflect a balance struck by the legislature between the rights and obligations of competing interest groups. To permit a common law remedy to exist side by side with a statutory remedy carries the risk that the legislatively mandated balance reflected by the statutory remedy will be subverted. Since the common law is subservient to statutory law, statutory remedies should generally supplant common law remedies where the two are inconsistent. AS 01.10.010; *Principal*, 780 P.2d at 1030.

In the present case two parallel remedies of a statutory nature are available: one created by an ordinance of the Kenai Peninsula Borough,[2] and the other created by AS 29.45.500(a). While these remedies are not necessarily consistent,[3] they sufficiently occupy the field so that it is reasonable to exclude, as a matter of legislative and borough assembly intent, yet another remedy based on the common law. We conclude therefore that the six-year statute of limitations does not apply.

### C. *The Two–Year Statute Applies*

■ It follows that the two-year statute of limitations governs this case. The liability of a municipality for a tax refund is a liability created by statute. As such, the liability squarely falls within the express language of AS 09.10.070(3), that "no person may bring an action . . . (3) upon a liability created by statute . . . unless commenced within two years."

Because the two-year statute applies, only the claim for the refund of 1988 taxes was timely. This action was brought on May 23, 1990. The 1987 taxes were paid on November 13, 1987, more than two years before this action was brought.

### II. *NO GENUINE ISSUES EXIST CONCERNING WHAT PORTION OF THE 1988 TAX PAYMENT SHOULD BE REFUNDED*

The Borough's arguments that this case should have been dismissed because Port

---

2. KPB Ordinance 85–70, § 1B–F provides that property owners who claim that their property is exempt from real estate taxation must appeal to the borough assessor. The assessor, in turn, is required to conduct a hearing and issue a written determination within seven days after the hearing date. The assessor's determination may be appealed within thirty days to the superior court. This procedure is authorized by AS 29.45.200(c), which allows the bypassing of the Board of Equalization in cases where the question is "whether property is taxable under the law."

3. For example, the only pre-condition to filing suit under section 500(a) is payment under protest; whereas under the ordinance the owner must "appeal" to the assessor; briefly state in writing the basis for the exemption claim; and, at least, await the assessor's decision before appealing to the superior court. KPB Ord. 85–70.

Graham did not exhaust its administrative remedies and that this case should be treated as an untimely filed administrative appeal do not apply to the 1988 taxes. For the 1988 tax year, the assessor concluded that all the properties in question were tax exempt. Port Graham did not have to appeal this decision as it was favorable to Port Graham.

We turn to the question of whether genuine issues of material fact remain concerning the amount of the refund due for 1988. The parties agree that Port Graham paid $4,636.23 under protest to the Borough for 1988 taxes with the notation: "Borough Property Taxes: (minimum) Payment Made under Protest." Port Graham has, at times, claimed that this entire payment was for tax exempt property and thus it should all be refunded. The Borough, on the other hand, asserts that the proceeds from the 1988 check were applied to taxable property of Port Graham, not to the parcels that the Borough had agreed to remove from the tax rolls. However, this assertion was presented in a pleading and affidavit that were ordered stricken from the record by the trial court on the grounds of untimeliness. Since the correctness of this order is not questioned on appeal we may not consider the Borough's assertion in deciding whether summary judgment was properly granted.

 The trial court concluded that there was no genuine issue of material fact in connection with the amount due, stating, "The monies paid on these parcels from 1984–88 have been specified on [Exhibits] 5 and 6 to the memorandum in support of plaintiff's motion for summary judgment." However, the amounts relating to 1988 tax payments set forth in Exhibits 5 and 6 are inconsistent. Exhibit 6 is the 1988 check for $4,636.23. Exhibit 5 is a listing of the taxes assessed and levied for each of the tax years in question listed by parcel. The total for 1988 is $2,118.55. This latter sum was incorporated in the final judgment for the 1988 refund based on a memorandum prepared by counsel for Port Graham. The fact that Port Graham's claim for a refund of 1988 taxes was internally inconsistent is, taken alone, insufficient to raise a genuine issue of material fact as to the amount of the refund due, in view of the fact that Port Graham and the court have selected the smaller of the two conflicting sums. Nothing in the record before the trial court raised a genuine issue concerning whether at least this sum should have been refunded. We therefore affirm the grant of summary judgment with respect to the refund of 1988 taxes.

### III. ATTORNEY'S FEES UNDER AS 29.-45.500(a)

Following the entry of the final judgment, Port Graham moved for attorney's fees and costs in the sum of $15,371.50. This motion was based on the second sentence of AS 29.45.500(a), which provides:

> If judgment for recovery is given against the municipality, or, if in the absence of suit, it becomes obvious to the governing body that judgment for recovery of the taxes would be obtained if legal proceedings were brought, the municipality shall refund the amount of taxes to the taxpayer with interest at eight percent from the date of payment *plus costs*.

(Emphasis added.) The trial court concluded that "the mandate to award 'costs' under AS 29.45.500(a) should be construed to include all reasonable attorney's fees incurred at the administrative or judicial level." However, the trial court awarded $10,216.46, a sum less than the full fee requested, to account for the fact that Port Graham initially sought tax refunds for some years in which no refunds were awarded and because the time expended by the attorney for the plaintiff was found to be somewhat excessive. In light of today's decision, this award must be vacated and the court must make such further adjustments as will be necessary to reflect the fact that Port Graham is entitled to a refund of taxes only for 1988.

The question remains whether the trial court properly construed AS 29.45.500(a) to cover attorney's fees as "costs," to apply to attorney's fees incurred both before and dur-

ing litigation, and to require an award of full reasonable fees.

We explained the legal context for these issues in *Kenai Peninsula Borough v. Cook Inlet Region, Inc.,* 807 P.2d 487, 501 (Alaska 1991):

> A superior court acting as a court of appeal from the decision of an administrative agency has authority to make an award of attorney's fees under Appellate Rule 508(e). Appellate Rule 601(b). Ordinarily, where such an award is made it should only partially compensate the prevailing party for attorney's fees and be limited to attorney's fees incurred in court, not those incurred in a prior administrative proceeding.... Appellate Rule 508(b), (c) and (e). However, actual costs and attorney's fees may be awarded where authorized by statute.

In that case, the trial court construed section 500(a) as the trial court in the present case did. This was challenged on appeal and we affirmed. However, we did so on a plain error standard of review, as the taxpayer's motion for attorney's fees had not been opposed in the trial court. We stated:

> Alaska Statute 29.45.500(a) provides that in tax refund suits the successful taxpayer is entitled to a refund with interest plus "costs." The trial court evidently construed the term "costs" as used in this statute to include attorney's fees. Further, the attorney's fees included within the statute were actual attorney's fees rather than the partial standard ordinarily contemplated under our rules. Finally, this statute was construed to apply to prior administrative proceedings as well as to proceedings in court. We do not find plain error with respect to any of these conclusions.

*Id.* We now review the same conclusions under the *de novo* standard of review applicable to questions of law in general and find them to be correct.

■ First, the term "costs" is generally construed in Alaska to include attorney's fees. *McDonough v. Lee,* 420 P.2d 459 (Alaska 1966); *see also In re Soldotna Air Crash Litigation,* 835 P.2d 1215, 1221 n. 9 (Alaska 1992) ("Chapter 60 of the Code of Civil Procedure uses the term 'costs' in the most general sense, so that it encompasses both expenses of litigation and attorney's fees."); *Liberty National Ins. Co. v. Eberhart,* 398 P.2d 997, 999 (Alaska 1965) (insurer's obligation to pay "all costs taxed against the insured" includes obligation to pay "attorney's fees allowed as part of the costs of the action").

■ Second, the fees to be allowed as part of costs under section 500(a) are full reasonable fees rather than reasonable fees computed on a partially compensatory standard as under Civil Rule 82. We view section 500(a) as expressing legislative policy that taxpayers who are entitled to tax refunds are entitled to a full reimbursement for the reasonable expenses that they have incurred in order to establish their right to a refund. This is similar to the legislative policy pertaining to holders of mechanic's liens. *Boyd v. Rosson,* 713 P.2d 800, 802 ("full fees should be awarded to successful lien claimants so long as the fees are reasonable," construing AS 34.35.005(b)), *modified on reh'g,* 727 P.2d 765 (Alaska 1986).

■ Third, section 500(a) plainly is intended to apply to costs incurred outside of litigation. Costs along with interest are expressly imposed as a part of the municipality's refund obligation "in the absence of suit" where the municipality would obviously lose if suit were filed. Since requiring the payment of costs incurred outside of litigation where no suit is filed but excluding such costs where suit is filed would make little sense, we conclude that costs incurred both before and during litigation are meant to be covered by the statute.

## IV. CONCLUSION

The two-year statute of limitations encompassed in AS 09.10.070 pertaining to liabilities created by statute governs suits for tax

refunds under AS 29.45.500(a). Port Graham's claim for tax refunds for the years 1984–1987 is therefore time barred. The judgment of the court pertaining to tax refunds for 1984–1987 is REVERSED. The judgment of the court pertaining to the refund of 1988 taxes is AFFIRMED. The court's award of attorney's fees and costs is VACATED and REMANDED for recalculation, which in part takes into consideration the fact that costs and reasonable attorney's fees are to be limited to those related to Port Graham's obtaining of a refund of taxes for 1988, although we agree with the court's legal conclusions concerning the nature and scope of the award authorized by AS 29.45.-500(a).

AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED for further proceedings.

BURKE, J., not participating.