CITY OF DILLINGHAM, an Alaska
Municipal Corporation,
Petitioner,

v.

CH2M HILL NORTHWEST,
INC., Respondent.

No. S–5230.

Supreme Court of Alaska.

May 6, 1994.

Brian Carter Boyd and Jeffrey S. Moeller, Hicks, Boyd, Chandler & Falconer, Anchorage, for petitioner.

D.K. "Kirby" Wright and William L. Hintze, Hintze, Herrig & Wright, Seattle, WA, for respondent.

Bruce E. Davison, Davison & Davison, Anchorage, and Jan T. Chilton and Michael B. Murphy, Severson & Werson, San Francisco, CA, for amici curiae American Consulting Engineers Council, ASFE: The Ass'n of Engineering Firms Practicing in the Geosciences, CA Geotechnical Engineers Ass'n, Hazardous Waste Action Coalition, and Nat. Soc. of Professional Engineers. Michael C. Geraghty, Staley, DeLisio, Cook & Sherry, Inc., Anchorage, and William J. Bender and Laura Kleisle, Skellenger Bender Mathias Bender & Gould, Seattle, WA, for amicus curiae The Consulting Engineers Council of Alaska.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

This matter is before the court on a petition for review filed by the City of Dillingham (City). At issue are the concepts of limited liability and indemnification, and the interpretation of AS 45.45.900.

### II. FACTS AND PROCEEDINGS

In February 1981, the City solicited proposals from engineering firms to prepare a U.S. Environmental Protection Agency Facility Plan related to the City's sewage treatment system. CH2M Hill Northwest, Inc. (CH2M Hill) submitted a proposal and was selected by the City.

In October 1985, CH2M Hill prepared a proposed Agreement for Engineering Services (Agreement) and submitted it to the City for review. The Agreement contained the following Limitation of Liability Clause (Clause):

> That, the OWNER agrees to limit the ENGINEER'S liability to the OWNER and to all construction Contractors, Subcontractors, material suppliers, and all others associated with the PROJECT, due to the ENGINEER'S sole negligent acts, errors, or omissions, such that the total aggregate liability of the ENGINEER to all those named shall not exceed Fifty Thousand Dollars ($50,000) or the ENGI-

NEER'S total compensation for services rendered on the portion(s) of the PROJECT resulting in the negligent acts, errors, or omissions, whichever is greater.

The City executed the Agreement on November 21, 1985. The City did not obtain counsel for the contract negotiations.

After signing the Agreement with CH2M Hill, the City awarded a contract for construction of the sewage treatment facility to Neal & Company, Inc. (Neal). Alleging that during construction it had discovered differing site conditions, Neal subsequently commenced an action against the City for increased costs. The City in turn filed a third-party complaint against CH2M Hill for breach of contract, breach of duty of care, and breach of fiduciary duty.

CH2M Hill moved for partial summary judgment against the City based on the Clause. At this time none of the parties had filed a claim for indemnification. The superior court granted partial summary judgment for CH2M Hill on two of the five issues raised in its motion.[1] First, the court ruled that the Clause applied to breaches of contract and breaches of fiduciary duty. Second, the court held that AS 45.45.900 did not apply to the Clause, and that the Clause was valid:

> [W]hat we have here is not, even if it is an indemnity agreement, an indemnity agreement that indemnifies the promisee. We have an indemnity agreement that indemnifies the promisor.
>
> The promisor is clearly the engineering firm here who's promising to do certain things for the City. The City is the beneficiary or the promisee of the contract, and 45.45.900 by its very language implies [sic] not to those circumstances. It applies clearly to the reverse circumstances and obviously the public policy behind this statute is exactly why it was worded as it was worded.

The idea behind the statute is to not allow owners, who are often governmental entities, from inducing people to contract with them to provide construction services and then have to sign away their right to go after the owner—usually the government—for negligence of that party. Obviously, it's to protect the contractors, it's not to protect the owners of the buildings or projects that are being built.

We granted the City's petition for review to consider four questions:

1. Does AS 45.45.900 ban indemnity agreements only when a state or local government is the project owner and indemnitee?

2. Should a standardized contractual provision exculpating a party from its own "negligent acts, errors or omissions" be broadly construed to apply to *knowing* breaches of contract and breaches of fiduciary duty?

3. Does AS 45.45.900 apply to reasonable limitation of liability clauses?

■ 4. Does AS 45.45.900 apply only when the party invoking a particular clause is seeking indemnity?

A. *Does AS 45.45.900 Ban Indemnity Agreements Only When a State or Local Government Is the Project Owner and Indemnitee?*[2]

Alaska Statute 45.45.900 states:

A provision, clause, covenant, or agreement contained in, collateral to, or affecting a construction contract that purports to indemnify the promisee against liability for damages for (1) death or bodily injury to persons, (2) injury to property, (3) design defects or (4) other loss, damage or expense arising under (1), (2), or (3) of this section from the sole negligence or wilful misconduct of the promisee or the promis-

---

[1] The other three issues are: whether the Clause is an indemnity clause prohibited by public policy because CH2M Hill owed a duty to the public at large; whether the Clause is void because the contract between CH2M Hill and the City is "affected with the public interest," and whether the Clause is void because it is unconscionable. The superior court deferred ruling on these is-sues because the City had requested additional time to conduct discovery.

[2] The interpretation of AS 45.45.900 and related questions of interpretation of the Clause present questions of law, which this court reviews de novo. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

ee's agents, servants or independent contractors who are directly responsible to the promisee, is against public policy and is void and unenforceable; however, this provision does not affect the validity of an insurance contract, workers' compensation, or agreement issued by an insurer subject to the provisions of AS 21, or a provision, clause, covenant, or agreement of indemnification respecting the handling, containment or cleanup of oil or hazardous substances as defined in AS 46.[3]

■ CH2M Hill has not argued, nor did the superior court rule, that the statute applies only to governmental indemnitees. The City's claim that "[the superior court determined] that the ban applies only to governmental project owners as indemnitees" appears to be based on a misinterpretation of the superior court's ruling. Although the superior court speculated that the legislature intended to protect contractors from being forced to enter unconscionable contracts concerning projects owned or operated by public sector owners, these comments were dicta. Instead, it is apparent that the superior court based its conclusion that the Clause was not within the scope of AS 45.45.900 on a mistaken assumption that CH2M Hill was the promisor and the City was the promisee, and that therefore the statute was inapplicable.[4]

3. The language beginning with "or a provision" at the end of this section was added in 1986. Ch. 59, § 6, SLA 1986. The effective date of the amended language was June 1, 1986. *See id.* § 20.

4. As a general proposition, the superior court's observation that "[t]he City is the beneficiary or the promisee of the contract" is correct. With regard to the Clause, however, the City was the promisor, as it was promising to limit CH2M Hill's liability. As the City notes, CH2M Hill was the promisee, or the beneficiary, of the Clause.

5. The legislative history of House Bill 105 states that the purposes of the bill were to
(1) simplify and clarify the law concerning the enforceability of hold harmless agreements;
(2) promote equitable contractual relationships between persons;
(3) facilitate the administration and enforcement of the negligence laws of the state;
(4) promote the public policy that all wronged persons should have a remedy for

■ There is no indication in the text of AS 45.45.900 itself that would indicate that the statute is intended to ban only indemnification clauses that would benefit a public promisee at the expense of a private promisor. The term "promisee" is not qualified in any way. While there is no legislative history discussing the purposes of Senate Conference Substitute Bill for House Bill 105, which was adopted and codified as AS 45.45.900, the legislative history of House Bill 105, a prior related omnibus bill, indicates that the legislature's general goal was to provide remedies for "all wronged persons."[5]

B. *Should a Standardized Contractual Provision Exculpating a Party from Its Own "Negligent Acts, Errors or Omissions" Be Broadly Construed to Apply to Knowing Breaches of Contract and Breaches of Fiduciary Duty?*

■ The superior court held:
[The Clause] clearly applies to both what you might think of as horn book law negligence, such as a driving accident, failure to perceive a risk on the road and getting involved in an accident thereby as well as to breaches of the contract between these two parties here, because the language clearly was negligence, errors and omissions, and thus would cover the engineer's

injury suffered as a result of another person's negligence;
(5) void agreements negating responsibility for a person's own negligence.
Our one prior interpretation of AS 45.45.900 couched its holding in terms of the state as indemnitee and a private contractor as indemnitor. *Rogers & Babler, a Division of MAPCO Alaska, Inc. v. State,* 713 P.2d 795 (Alaska 1986). This holding was a result of the facts of the case, rather than an expression of any intent to interpret the statute as only applying in the context of a public sector indemnitee.
In that case, we interpreted the relationship between AS 45.45.900 and the State's Standard Specifications for Highway Construction, which provided for indemnification of the state by any contractor who undertook a state highway construction project. We held that "AS 45.45.900 [should invalidate an indemnification clause] only when it is determined, as between the state and the contractors, that the state is solely negligent." *Id.* at 798.

performance of his duties to [the City] under the contract.

The City argues that the language of the Clause does not cover causes of action other than negligence. The City notes that in *Kissick v. Schmierer*, 816 P.2d 188 (Alaska 1991), this court cited favorably to California case-law requiring that the language of indemnity clauses be clear and explicit:

> [T]o be effective, an agreement which purports to release, indemnify or exculpate the party who prepared it from liability for that party's own negligence or tortious conduct must be clear, explicit and comprehensible in each of its essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement.

*Id.* at 191 (quoting *Ferrell v. Southern Nev. Off–Road Enthusiasts, Inc.*, 147 Cal.App.3d 309, 195 Cal.Rptr. 90, 95 (1983)) (alteration in original).

The City notes that other jurisdictions similarly have read release language narrowly. For example, the Supreme Court of Arkansas held that while a similar clause that limited the liability of an engineer for "professional negligent acts, errors or omissions" was enforceable, it did not limit liability for breaches of contract. *W. William Graham, Inc. v. City of Cave City*, 289 Ark. 105, 709 S.W.2d 94, 95–96 (1986).

Additionally, the City states that "CH2M Hill's clause should also be construed in light of [a] general rule of construction of this type of clause [that] [t]he more egregious the conduct, the less likely the courts are to allow it to be covered by indemnification or release language." The City cites 6A Arthur L. Corbin, *Corbin on Contracts* § 1472, at 596–97 (1962), for the proposition that a release of liability for negligence does not encompass a release of liability for *intentional* wrongdoing. Since CH2M Hill's alleged knowing breaches of contract and fiduciary duty are egregious, the City argues, they should be similarly distinguished from simple negligence, and accordingly found to be outside the scope of the release.

In contrast, CH2M Hill argues that the contractual duty of care as defined by the Agreement is the same as the duty of care enunciated by this court in the context of third-party tort actions. *See Moloso v. State*, 644 P.2d 205, 217 (Alaska 1982). Accordingly, CH2M Hill concludes, any claims by the City that CH2M Hill has breached its duty of care, whether sounding in contract or in tort, are within the scope of the Clause. CH2M Hill does not distinguish between "knowing" and innocent breaches in its analysis.

■ We conclude that an exculpatory clause that limits liability for a party's "negligent acts, errors, or omissions" should be construed to limit liability for "negligent acts, errors, or omissions" only. Since negligent acts, negligent errors, or negligent omissions when committed in the context of contract performance may be contract breaches, we conclude that the superior court was correct in ruling that the clause applies to breaches of contract and fiduciary duty, but only insofar as the breaches are negligent.

■ Liability for "knowing," or "bad faith" breaches can never be limited. Corbin notes that a party may contract to limit liability for damages resulting from breach of contract, but adds that "such a provision is not effective in case he acts fraudulently or in bad faith." 6A A. Corbin, *supra*, § 1472, at 606.[6]

### C. Does AS 45.45.900 Apply to Reasonable Limitation of Liability Clauses?

■ The City contends that the scope of the statutory prohibition on indemnification agreements encompasses limitation of liability clauses such as the one in question. According to the City, the legislature intended a broad reading of AS 45.45.900 to prohibit limitation of liability clauses.

■ CH2M Hill disagrees, contending that indemnity and limitation of liability are not synonymous terms:

> Each has a different purpose and is operative under different facts. Indemnity provides protection against third-party claims,

---

6. While Corbin does not discuss limits on liability for bad faith breaches of fiduciary duty, we believe any such limits would be barred under the same logic.

i.e. claims by strangers to the contract. Limitations of liability allow contracting parties to allocate risks, define remedies, and limit liabilities between themselves.

CH2M Hill cites a leading treatise for the proposition that courts have generally upheld reasonable limitations of liability. *See* 15 Samuel Williston & Walter H.E. Jaeger, *Williston on Contracts* § 1750A (3d ed. 1972).[7]

Relying in part on *Kodiak Electric Ass'n v. DeLaval Turbine, Inc.*, 694 P.2d 150 (Alaska 1984), CH2M Hill additionally contends that Alaska case law restricts the operation of an indemnity clause to the context of third-party claims. The dispute in *DeLaval Turbine* arose from the failure of a rebuilt electric generator, which the defendant had sold to the plaintiff after obtaining repairs from a non-party firm. *Id.* at 152. The plaintiff sought damages from the defendant under a contractual indemnity clause, on the ground that the defendant had failed to hold the plaintiff harmless against losses resulting from the non-party's negligence. We rejected this claim because the plaintiff was not seeking to recover damages that it had paid to a third party. *See id.* at 154.[8]

▮▮▮▮▮▮ However, our task here is not to construe the term "indemnity" as courts would when adjudicating claims, but to determine the meaning that the legislature intended when using the term in AS 45.45.900. *See generally* 5 C. Allen Foster et al., *Construction and Design Law* § 36.4c.6c (1991) (discussing statutes that prohibit indemnity agreements holding a party harmless for its own negligence, and that thus depart from the common-law rule allowing hold harmless agreements). The objective of statutory construction is to give effect to the intent of the legislature, with due regard for the meaning that the statutory language conveys to others. *Saunders Properties v. Municipality of Anchorage*, 846 P.2d 135, 138 n. 4 (Alaska 1993). Though we give unambiguous statutory language its ordinary and common meaning, we have rejected the "plain meaning" rule as an exclusionary rule, and we may look to legislative history as a guide to construing a statute's words. *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 540 & n. 7 (Alaska 1978). The plainer the meaning of the statute, the more persuasive any legislative history to the contrary must be. *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991).

Early drafts of the proposed legislation indicate an intent to prohibit not only indemnity clauses but also limitation of liability clauses. These early drafts included a broad statement that the purpose of the proposed chapter was, among other things, to "promote the public policy that all wronged persons should have a remedy for injury suffered by [sic] a result of another person's negligence," and to "void agreements negating responsibility for a person's own negligence." In addition, the legislature considered, and rejected, an amendment that would have explicitly allowed limitation of liability clauses as an exemption to the prohibition against indemnification for liability resulting from the promisee's sole negligence.[9]

CH2M Hill asserts that the value of the legislative history is questionable, because early drafts of the provision were both ex-

---

7. In its current form, AS 45.45.900 exempts indemnification agreements "respecting the handling, containment, or cleanup of oil or hazardous substances as defined in AS 46." CH2M Hill argues that the exemption applies here, even if this court finds limitation of liability to be synonymous with indemnification.

We reject this argument. The referenced exemption was made effective as of June 1, 1986, *see* ch. 59, §§ 6, 20, SLA 1986, and the Agreement was executed in November of 1985. The enforceability of contract provisions is to be determined by the statutes in effect at the time the contract is executed. *Stephan & Sons, Inc. v. Municipality of Anchorage*, 629 P.2d 71, 78 & n. 19 (Alaska 1981).

8. Amici Curiae make a similar argument. The Consulting Engineers of Alaska argue that under this court's holdings, "[i]ndemnity involves the recovery of money paid to a third party; limitation of liability merely involves the contractual allocation of risk between two parties in privity to a predetermined sum."

9. The proposed exemption stated:

Nothing in this chapter shall prevent a party to a construction contract and the owner or other party for whose account the construction contract is being performed, from agreeing with respect to the allocation or limitation as between the parties, of any liability for design defects.

tremely broad and never enacted. The firm argues that the final language of AS 45.45.-900 limiting its scope to ban certain indemnity clauses was quite clear, and accordingly there was no reason to list exemptions for subjects that the statute did not cover, such as limitation of liability. CH2M Hill also relies on *Markborough California, Inc. v. Superior Court,* 227 Cal.App.3d 705, 277 Cal. Rptr. 919 (1991), in which a California appellate court distinguished "indemnity" from "limitation of liability," and determined that the California legislature intended to broadly exclude limitation of liability clauses from a statutory prohibition on indemnity clauses. *See id.* 277 Cal.Rptr. at 923–26.

We reject CH2M Hill's characterization of the Alaska legislature's intent. The absence in AS 45.45.900 of an exemption for limitation of liability clauses indicates that the legislature did not intend to allow an exemption. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 48.18 (5th ed. 1992).

Furthermore, *Markborough* is not helpful, because there the court construed a statutory provision that expressly permitted limitation of liability clauses, rather than a general prohibition on indemnity clauses with no express exemption.[10] *See* 277 Cal.Rptr. at 922. In contrast, a Georgia appellate court, construing a statutory bar on indemnity clauses with no exemptions,[11] concluded that a similar "limitation of liability" clause was a void "indemnity" clause. *See Bicknell v. Richard M. Hearn Roofing & Remodeling, Inc.,* 171 Ga.App. 128, 318 S.E.2d 729, 731–32 (1984).

Similarly, we read the word "indemnify" as used in AS 45.45.900 to mean "exempt," and thus construe AS 45.45.900 to prohibit limitation of liability clauses. Absent legislative action to the contrary, such an interpretation best fulfills the legislature's express intent to prevent a party to a construction contract from bargaining away liability for his or her own negligent acts.[12] Therefore, the limita-

**10.** CH2M Hill reads *Markborough* to mean that even absent statutory "exclusionary language" for clauses limiting liability, the relevant California legislation would not bar such clauses. In particular, CH2M relies on the *Markborough* court's summary of a legislature report on amendments to the California statutory provision in 1980. The court discussed the report's concern that one could construe the broad statutory definition of indemnity to encompass limitation of liability clauses, even though such clauses were not commonly considered to be indemnity provisions. *Markborough,* 277 Cal.Rptr. at 923. The *Markborough* court also reiterated that limitation of liability clauses are valid in California under the common law. *See id.* 227 Cal.Rptr. at 925, 926.

We reject CH2M Hill's interpretation of *Markborough.* In *Markborough,* the court construed a 1980 amendment of the statutory exception, *see id.* 277 Cal.Rptr. at 923–24, which stated that the bar on indemnity clauses would not prevent parties from "negotiating and expressly agreeing" to limitations of liability. Cal.Civ.Code § 2782.5 (West 1993). The appellant in *Markborough* urged a narrow construction of the statutory exception to require "negotiation," so that a limitation of liability clause would be invalid unless the parties actually discussed the clause and the allocation of risks that it would impose. *See id.* 277 Cal.Rptr. at 923, 925. Construing the legislature's purpose for the express statutory exception and California common law, the *Markborough* court rejected such a narrow construction, upholding limitation of liability clauses as long as "each party had an opportunity to accept, reject or modify" them. *Id.* 277 Cal.Rptr. at 926.

The issues in *Markborough* differ from the question we must resolve here. We must determine whether Alaska's statutory prohibition of indemnity provisions contains an implied exception for limitation of liability clauses, not whether the language of an express exception mandates a narrow construction. CH2M Hill makes no showing of express legislative intent to exclude limitations of liability from the general bar on indemnity clauses.

**11.** *See* Ga.Code Ann. § 13–8–2(b) (Michie 1993) (prohibiting provisions in construction contracts "purporting to indemnify or hold harmless the promisee against liability for damages ... caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee").

**12.** Furthermore, though we do not reach the issue here, we observe that many courts allow a third-party recovery in tort for economic losses resulting from a design professional's negligent acts, despite the absence of contractual privity between the third party and the professional. *See, e.g., United States ex rel. Los Angeles Testing Lab. v. Rogers & Rogers,* 161 F.Supp. 132 (S.D.Cal.1958); *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292, 1295–97 (1984); *Waldor Pump & Equip. Co. v. Orr–Schelen–Mayeron & Assocs., Inc.,* 386 N.W.2d 375 (Minn.App.1986). *But see Widett v. United States Fidelity & Guar. Co.,* 815 F.2d 885 (2d Cir.1987) (refusing to find design professionals liable to subcontractors under New York law, absent privity of contract); *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp.*

tion of liability clause in the contract between CH2M Hill and the City is void under AS 45.45.900.

> D. *Does AS 45.45.900 Apply Only When the Party Invoking the Particular Clause in Question Is Seeking Indemnity?*

■ The City argues that since a limitation of liability clause and an indemnification clause are synonymous, and therefore void under AS 45.45.900, the statute applies regardless of whether or not indemnity is sought.

. CH2M Hill contends that AS 45.45.900 does not apply to these proceedings under the principle of *DeLaval Turbine,* 694 P.2d at 154, since the City is not seeking to recover money that it has paid to a third party for damages.

We conclude that AS 45.45.900 applies to a clause that is questioned under this statute regardless of whether indemnification has been sought. The statute states that an indemnification clause that limits liability for a promisee's sole negligence "is void and unenforceable." Had the legislature stated only that such a clause is "unenforceable," then the statute would apply only when a party attempted to *use* the clause, as opposed to *interpreting* it. Since the statute also states that such a clause is void, we find the statute applicable when presented in a hypothetical context such as this petition. Accordingly, that portion of the Clause that addresses the responsibility for damages of third parties is void.

## III. *CONCLUSION*

The superior court's holding that AS 45.45.900 does not apply to the Clause is REVERSED.

*Ass'n,* 54 Ohio St.3d 1, 560 N.E.2d 206 (1990) (concluding that privity doctrine holds parties to their contracts). *See generally* Frank D. Wagner, Annotation, *Tort Liability of Project Architect for Economic Damages Suffered by Contractor,* 65 A.L.R.3d 249 (1975). Were we to allow third parties a tort action against a design professional

for economic losses, a judicially created exemption to AS 45.45.900 for limitation of liability clauses conceivably could create an inequitable situation, in which a design professional's liability for negligence could depend merely upon a plaintiff's fortuitous choice of defendants.