Charles E. UNDERWOOD, Jr., Susie G. Underwood, and Anthony C. Underwood, Appellants,

v.

STATE of Alaska, Governor Walter J. Hickel and Department of Revenue, Appellees.

No. S–5802.

Supreme Court of Alaska.

Sept. 30, 1994.

---

Robert John, Law Office of Robert John, Fairbanks, for appellants.

Vincent L. Usera, Asst. Atty. Gen., and Bruce M. Botelho, Atty. Gen., Juneau, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

MOORE, Chief Justice.

At issue in this appeal is the constitutionality of a 1992 amendment to the permanent fund dividend (PFD) statutes, Chapter 4,

section 4, SLA 1992. The amendment changed the qualifying date set forth in AS 43.23.005(a) for a 1993 PFD. Charles E. Underwood, Jr., along with his wife and son, Susie G. Underwood and Anthony C. Underwood (the Underwoods), allege that they were unlawfully denied 1993 PFDs as a result of the change. They instituted this action against the State of Alaska, Governor Walter J. Hickel and the Department of Revenue (collectively "the State"), claiming that the amendment violated a number of their constitutional rights and that the State was estopped from denying their dividend applications. The superior court granted summary judgment in favor of the State. We affirm.

## I. FACTS AND PROCEEDINGS

The facts are not in dispute. The Underwoods timed their move from Texas to Alaska with the specific intention of becoming Alaska residents in time to qualify for a 1993 PFD. According to Charles Underwood, he understood that in order to qualify for the 1993 PFD, the family members had to be state residents on or before April 1, 1992. Although Charles otherwise would have preferred to remain at his job in Texas until May 1992, he resigned in March. Had Charles remained at his job until late May as he desired, Charles claims he would have earned roughly another $3,000 in after tax wages. The family arrived in Alaska on March 25, 1992.

On March 31, 1992, Governor Hickel signed Chapter 4, section 4, SLA 1992, which amended AS 43.23.005 by changing the eligibility requirements for a PFD to coincide with the calendar year. As a result, to be eligible for a 1993 PFD, applicants had to show Alaska residency as of January 1, 1992. Accordingly, persons who established Alaskan residency between January 2, 1992 and April 1, 1992 were not eligible for a 1993 PFD, whereas under prior law they would have been eligible.

The Underwoods brought suit in superior court challenging the constitutionality of the enactment. They specifically claimed that it violated the equal protection and due process guarantees of the federal and state constitutions, that it constituted an ex post facto law, that it was an impermissible taking of property, and that the State was equitably estopped from amending the law.

The superior court granted summary judgment in favor of the State on all of the Underwoods' claims. The Underwoods appeal.

## II. DISCUSSION

The parties agree that there are no issues of material fact, and that this case may be properly resolved as a matter of law. The constitutional and other purely legal questions at bar are issues to which this court will apply its independent judgment. State v. Anthony, 810 P.2d 155, 156–57 (Alaska 1991); Croft v. Pan Alaska Trucking, 820 P.2d 1064, 1066 (Alaska 1991).

### A. The Challenged Enactment Does Not Violate The Underwoods' Constitutional Rights.

Alaska Statute 43.23.005 governs the eligibility requirements for a PFD. Following the enactment of Chapter 4, section 4, SLA 1992, the statute provided that:

> (a) An individual is eligible to receive one permanent fund dividend each year in an amount to be determined under AS 43.23.025 if
>
> . . . .
>
> (3) the individual was a state resident for at least the calendar year immediately preceding January 1 of the current dividend year; . . . .

AS 43.23.005(a)(3) (emphasis added). Prior to the 1992 amendment, the statute required Alaska residency for the twelve month period immediately preceding April 1 of the current dividend year. AS 43.23.005(a)(2) (effective June 11, 1991).

### 1. Equal Protection

■ The Underwoods assert that the 1992 enactment denied them equal protection and opportunity under both the Federal and Alaska Constitutions. See U.S. Const. amend. XIV; Alaska Const. art. I, § 1. Because Alaska's equal protection clause "is more protective of individual rights than the

federal equal protection clause," *State v. Anthony*, 810 P.2d at 157, we focus our analysis on the Alaska Constitution.[1]

■ We have adopted a sliding scale approach to equal protection questions. *State v. Erickson*, 574 P.2d 1, 11–12 (Alaska 1978). Under this approach, " '[t]he applicable standard of review for a given case is to be determined by the importance of the individual rights asserted and by the degree of suspicion with which we view the resulting classification scheme.' " *State, Dep't of Revenue v. Cosio*, 858 P.2d 621, 629 (Alaska 1993) (quoting *State v. Ostrosky*, 667 P.2d 1184, 1192–93 (Alaska 1983)). As the level of scrutiny selected moves up the sliding scale, the asserted governmental interests must be relatively more compelling, and the legislation's means-to-ends fit must be correspondingly closer. *Ostrosky*, 667 P.2d at 1193. Conversely, "if relaxed scrutiny is indicated, less important governmental objectives will suffice and a greater degree of over/or underinclusiveness in the means-to-ends fit will be tolerated." *Id.* (footnote omitted).

■ We have held that an individual's interest in a PFD "is merely an economic interest and therefore is entitled only to minimum protection under our equal protection analysis." *Anthony*, 810 P.2d at 158. Under this minimum level of scrutiny, the State must show that the challenged enactment was designed to achieve a legitimate governmental objective, and that the means bear a "fair and substantial" relationship to the accomplishment of that objective. *Cosio*, 858 P.2d at 629; *Anthony*, 810 P.2d at 158–59.[2]

The State asserts that the purpose of the challenged legislation was to improve the overall efficiency of the PFD program. By moving the qualifying date to coincide with the calendar year, the PFD division of the Department of Revenue gains three months to process applications. This additional time should result in earlier detection of ineligible applicants and fewer improperly paid PFDs, less need for temporary staff to process applications, and quicker resolution of questioned applications, thereby decreasing the number of delayed payments. The State also asserts that the amendment was intended to simplify the PFD program, thereby decreasing public confusion and minimizing the many date-related errors that result in missed dividends.

These objectives are legitimate ones, and we reject the Underwoods' argument to the contrary. The Underwoods contend that the cited objectives are not legitimate because they are based on cost savings and efficiency. *See Herrick's Aero–Auto–Aqua Repair Serv. v. State, Dep't of Transp.*, 754 P.2d 1111, 1114 (Alaska 1988) ("[C]ost savings alone are not sufficient government objectives under [Alaska's] equal protection analysis."). However, the challenged legislation here is distinguishable from that in *Herrick's*. It is not justified solely by cost savings that are "achieved by excluding a class of persons from benefits they would otherwise receive." *Id.* (quoting *Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 272 (Alaska 1984)). Moreover, the State's goals of improved efficiency and consumer understanding represent different objectives than the mere goal of cost savings discussed in *Herrick's* or in *Brown*. *See id.; Brown*, 687 P.2d at 272. We therefore conclude that the goals of the 1992 amendment pass the legitimacy test.

The means-to-ends tailoring of the amendment also satisfies the "fair and substantial relation" test. In arguing to the contrary, the Underwoods largely look to the fact that the State extended the application period for

---

1. Article I, section 1 of the Alaska Constitution states, "[t]his constitution is dedicated to the principle[ ] that ... all persons are equal and entitled to equal rights, opportunities, and protection under the law...." Although the parties do not specifically address the issue, the class allegedly subject to disparate treatment under the amendment includes all persons who would have been eligible for a 1993 PFD but for the three month change in the qualifying date.

2. Although the Underwoods acknowledge that the rational basis test ordinarily applies to a person's interest in a PFD, they assert that the 1992 enactment interferes with their right to travel, thereby implicating strict scrutiny analysis. However, the issues in this case do not implicate the right to travel and are properly subject to rational basis review.

1993 PFDs through June 1992.[3] Their argument is that, because the *application* period for 1993 PFDs was extended, the legislature also could and should have extended the *eligibility* period for 1993 PFDs.

However, the extended application period was specifically intended to reduce public confusion resulting from the 1992 statutory amendments, and it is substantially related to the purpose of the legislation. Moreover, the fact that the application time was extended says little about the claims at issue in this case. The State does not assert that it rejected the Underwoods' applications because of the additional burden in processing them. The issue is merely whether the changed qualifying date is fairly and substantially related to the goals of the 1992 amendments. Certainly, the State *could* have elected to permit applicants to achieve the one year residency requirement any time during the extended 1993 application period, thereby resulting in acceptance of the Underwoods' applications. However, the State's decision not to extend the qualifying date along with the application deadline does not mean that the enactment fails to satisfy the fair and substantial relation test. To the contrary, viewing the goals and means of the challenged legislation, we conclude that the State was not constitutionally required to extend the eligibility period for 1993 PFDs simply because it was feasible to do so.

The Underwoods next rely on *Isakson v. Rickey*, 550 P.2d 359, 363–65 (Alaska 1976), to argue that the exclusion of people in their situation from 1993 PFD eligibility fails the fair and substantial relation test. However, *Isakson* does not control the outcome in this case. There, the purpose of the challenged statute was to allocate limited entry commercial fishing permits, with selection to be based upon certain hardship standards. *Id.* at 360. To demonstrate hardship, the statute specified that the applicant must have been

the holder of a gear license prior to a cut-off date of January 1, 1973. *Id.* at 360–61. It was assumed that holders of gear licenses obtained after January 1, 1973 could not show hardship. We determined that the January 1, 1973 cut-off date was not fairly and substantially related to identifying the hardship necessary for an entry permit. *Id.* at 365. We found that the cut-off date was both overbroad and underinclusive. It was overbroad because it would include pre–1973 gear license holders who were no longer involved in commercial fishing and could not show hardship; it was underinclusive because it would exclude other persons who actively participated in and were economically dependent upon the fishery. *Id.*

The statute at issue in *Isakson* cannot be logically compared to the challenged amendment in this case. Unlike the extremely loose tailoring in *Isakson*, the action moving the qualifying date for 1993 PFDs by three months is fairly and substantially related to the purpose of simplifying the PFD program in order to decrease public confusion and to improve efficiency and accuracy in administering the program. There is no significant danger of over or underinclusiveness as a result of the State's action.

Because the challenged amendment derives from a legitimate governmental objective, and the means bear a fair and substantial relation to that objective, the 1992 amendment to AS 43.23.005(a) survives minimal scrutiny under Alaska's Constitution. Accordingly, the Underwoods' equal protection claim fails.

### 2. *Due Process*

■ The Underwoods next assert that the enactment violated their due process rights because upon their arrival in Alaska in March 1992, they had a vested right to 1993 PFDs, subject only to their continuing residence.[4] We disagree.

---

3. The PFD application period is governed by AS 43.23.011, which became effective on January 1, 1993 and requires that applications for PFDs be filed between January 2 and March 31 of the dividend year. Chapter 4, section 19(b), SLA 1992 provided that, notwithstanding this section, the application period for 1993 would extend through June 30, 1993.

4. Article I, section 7 of the Alaska Constitution provides:

"No person shall be deprived of life, liberty, or property, without due process of law...." The Fifth Amendment to the United States Constitution contains a similar guarantee.

As of March 31, 1992, the Underwoods had been Alaska residents for approximately six days, far short of the twelve month requirement of AS 43.23.005 as it existed when the Underwoods arrived. At that time, the Underwoods possessed nothing more than an inchoate expectancy of a 1993 PFD that is not afforded constitutional protection. *See Norton v. Alcoholic Beverage Control Bd.,* 695 P.2d 1090, 1092 n. 4 (Alaska 1985) (vested property rights are protected against state action by the due process clauses of the Alaska and United States Constitutions; *Bidwell v. Scheele,* 355 P.2d 584, 586 (Alaska 1960) (same).

The Underwoods cite to real property cases from other jurisdictions to support their claim that their reliance on AS 43.23.-005 at the time of their move to Alaska should give them a vested right in the law as it existed on the date of their move. The Underwoods' analogy between real property transactions and the present case is unpersuasive. Unlike real property situations in which the complaining party indisputably possesses property rights in specific land, the Underwoods had no property right whatsoever in a 1993 PFD.[5] Accordingly, there is no due process violation in this case.

### 3. *Ex Post Facto Law*

■ The Underwoods next assert that the 1992 amendment constitutes an ex post facto law in violation of the Alaska Constitution.[6] An ex post facto law is a law " 'passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed.' " *Danks v. State,* 619 P.2d 720, 722 n. 3 (Alaska 1980) (quoting *Black's Law Dictionary* 520 (5th ed. 1979)).

■ In determining whether a statute affecting pre-enactment conduct is unconstitutionally retrospective, one inquiry is into whether the statute affects vested rights. *See Norton,* 695 P.2d at 1092; *see also Black's Law Dictionary* 1317–18 (6th ed. 1990) (A "retrospective" or "retroactive" law is generally defined as a law which "takes away or impairs vested rights acquired under existing laws, or creates new obligations, imposes a new duty or attaches a new disability in respect to transactions or considerations already past.") (citation omitted). The Underwoods had no vested right to a 1993 PFD as of March 31, 1992, just as no Alaskan had a vested right to a 1993 dividend at that time.[7] Therefore, under a vested rights inquiry, the amendment clearly does not constitute an impermissible ex post facto law in violation of the Alaska Constitution. *See Property Owners Ass'n v. City of Ketchikan,* 781 P.2d 567, 574 n. 12 (Alaska 1989) (a statutory change which merely disappoints economic expectations and does not affect vested rights is not an ex post facto law).

The Underwoods alternatively urge us to reject a vested rights inquiry and instead review the challenged enactment for fairness and reasonableness. *See Norton,* 695 P.2d at 1092–93 (noting the deficiencies of the vested rights analysis in determining whether a statute is in fact retroactive and whether it is unconstitutional); 2 Norman J. Singer, *Sutherland Statutory Construction* § 41.05, at 369–71 (5th ed. 1993) (fairness considerations represent a more meaningful standard of evaluating retroactive laws than a vested rights analysis). Even under such a standard, however, we find that the 1992 amendment at issue in this case withstands constitutional scrutiny.

The effective date of the 1992 amendment to AS 43.23.005 was January 1, 1993. The amendment made state residency during calendar year 1992 relevant to eligibility for a 1993 PFD, thereby bearing some relation to events dating back to January 1, 1992, instead of April 1, 1992 as under the prior law.

---

5. Similarly, because the Underwoods had nothing more than an inchoate expectancy of a 1993 PFD, they had no property that could have been the subject of a taking in violation of the Fifth Amendment of the Federal Constitution and Article I, section 18 of the Alaska Constitution. Accordingly, this argument also fails.

6. Article I, section 15 of the Alaska Constitution provides that "[n]o bill of attainder or ex post facto law shall be passed...."

7. In fact, because the entire dividend program is a creature of the legislature, it could have been abolished during the 1992 legislative session, so that no Alaskan received a 1993 PFD.

We are satisfied that this change did not unfairly or unreasonably impinge upon any property rights or settled expectations. Thus, we find that the amendment does not violate the constitutional prohibition against retroactive legislation. The Underwoods' claim on this ground therefore fails. *See, e.g., ARCO Alaska, Inc. v. State,* 824 P.2d 708, 710–12 (Alaska 1992) (upholding a tax law amendment which retroactively applied to a seven month period); *Wien Air Alaska, Inc. v. State, Dep't of Revenue,* 647 P.2d 1087 (Alaska 1982) (assuming the constitutionality of amendments to a tax statute retroactively applying to a six month period).

### B. *The State Is Not Equitably Estopped From Denying the Underwoods Their 1993 PFDs.*

■ The Underwoods lastly claim that the State should be estopped from enforcing the 1992 amendment as to them because they acted in detrimental reliance on the prior law. We reject this claim. In short, the Underwoods undertook a calculated risk when they decided to move to Alaska in March rather than May of 1992. The State engaged in no conduct encouraging this action, or in any way guaranteeing that the Underwoods would qualify for a 1993 PFD if they arrived in March. Thus, while it is unfortunate that the Underwoods' calculated risk did not pay off, the State is not obligated to pay for any losses incurred by the Underwoods as a result of their decision to move to Alaska in March.

### III. *CONCLUSION*

The State's amendment to the eligibility statute for 1993 PFDs did not violate the Underwoods' constitutional rights. Nor is the State equitably estopped from denying the Underwoods a 1993 dividend. Accordingly, the superior court's order granting summary judgment in favor of the State is AFFIRMED.