CARNEY, Justice.
I. INTRODUCTION
A husband and wife appeal denials of their Permanent Fund Dividends (PFDs) for 2014 and 2015. The husband's 2014 PFD application was denied because he had been absent from the state for more than five years, creating a presumption of nonresidence that he was unable to rebut. The wife's application was denied because her PFD eligibility as an accompanying military spouse depended on her husband's. After the denials were affirmed by an Administrative Law Judge (ALJ), the couple appealed to the superior court.
While this appeal was pending they both applied for 2015 PFDs and were again denied. The husband's 2015 application was denied because his residency for PFD purposes was severed in the 2014 PFD proceedings and he had not reestablished it. The wife's application was again denied because of her accompanying-spouse status. They appealed the 2015 denials as well; the superior court consolidated the 2014 and 2015 cases and affirmed both denials.
The husband and wife appeal. They argue that the requirement that they be physically present in Alaska for 30 days in the five years preceding their application, pursuant to AS 43.23.008(d)(1), is unconstitutional. They also argue that we should interpret the relevant statutes and regulations in the light most favorable to them, which they claim would entitle them to both 2014 and 2015 PFDs. Finally, they argue that even if we uphold the statute as constitutional, we *969 should nevertheless award them 2014 and 2015 PFDs through our "equitable powers."
Because neither spouse meets the residency requirements to qualify for either a 2014 or a 2015 PFD under the plain language of the statute, and because we find that the statute is constitutional, we affirm the ALJs' decisions. As our equitable powers do not extend to ignoring a valid and unambiguous statute duly enacted by the legislature, we decline to award PFDs on this ground.
II. FACTS AND PROCEEDINGS
A. Facts
Donald Jones first came to Alaska in 1998 when he was stationed at Elmendorf Air Force Base. In 2000 he married Annette Gwalthney-Jones, a long-time Alaska resident. Jones was transferred out of the state in 2001; despite numerous requests he was never reassigned to Alaska. The Joneses nonetheless maintained significant ties to the state: they registered their vehicles in Alaska, held Alaska driver's licenses, owned real property in Anchorage, and cast absentee ballots in Alaska elections. There is no dispute that since Jones's 2001 transfer both he and his wife "have intended to return to the state and to remain indefinitely." They returned permanently on November 29, 2014, shortly before Jones retired from the Air Force.
Jones was eligible for and received a PFD from 2001 to 2013. Gwalthney-Jones was eligible for and received a PFD from 1982 to 2013. Despite being largely absent from 2001 until their return to Alaska in 2014, they remained eligible for PFDs until 2013 because their absences were allowed by a special exception for military service members and their spouses under AS 43.23.008(a)(3).[1] Following their return, they both applied for and received 2016 PFDs.
B. Proceedings
1. 2014 PFD applications and administrative proceedings
In March 2014 Jones and Gwalthney-Jones applied for 2014 PFDs. Eligibility for 2014 PFDs depended upon their qualifying as residents during 2013.[2] In June 2013 the Alaska Legislature revised the PFD eligibility statutes and adopted AS 43.23.008(d), which states:
After an individual has been absent from the state for more than 180 days in each of the five preceding qualifying years, the department shall presume that the individual is no longer a state resident. The individual may rebut this presumption by providing clear and convincing evidence to the department that
(1) the individual was physically present in the state for at least 30 cumulative days during the past five years; and
(2) the individual is a state resident as defined in AS 43.23.295.[3]
The legislature made this statute retroactive to January 1, 2013.[4]
Alaska Statute 43.23.008(d) codified a Division regulation that had been in place since 1999, 15 Alaska Administrative Code (AAC) 23.163, with one key difference.[5] The regulation had imposed the same 30 days/5 years requirement to rebut a presumption of nonresidence, but it had allowed an exception if an individual could show "that unavoidable circumstances prevented that individual from *970 returning" for the required 30 cumulative days.[6] The 2013 statute does not contain the "unavoidable circumstances" exception.[7]
The Division, reading AS 43.23.008(d)(1) to eliminate any exception from the 30 days/5 years rule, denied Jones's 2014 PFD application. It is undisputed that Jones had been absent from the state for more than 180 days in each of the previous five qualifying years for the 2014 PFD, i.e., 2009-2013. It is also undisputed that he had not been physically present in Alaska for at least 30 cumulative days during the same five-year period. The Division also denied Gwalthney-Jones's 2014 application, finding that her eligibility depended on her husband remaining eligible.[8]
The Joneses requested informal appeals of their 2014 PFD denials. They argued that their ties to Alaska proved their intent to remain Alaska residents, but they did not address the 30 days/5 years statutory language. The Division denied Jones's appeal, stating that "the current law clearly states [that] an individual who is not back for 30 days is no longer a state resident for PFD purposes." The Division also denied Gwalthney-Jones's informal appeal, finding "no provision in law" that would entitle her to a 2014 PFD when she had been "absent from Alaska for more than 180 days during 2013 accompanying an individual ineligible to receive the 2014 PFD."
The Joneses then requested formal hearings, at which they had the burden to prove that the Division had erred in denying their applications.[9] They again emphasized their ties to Alaska; they also argued for the first time that the 30 days/5 years rule was an ex post facto law and that it conflicted with another provision in the PFD statutes.[10] The Division argued that the 2013 statute's wording precluded it from considering "why an individual failed to meet the 30 day return requirement, as it could do [previously] under [the] regulation."
Following a hearing the ALJ issued a decision and order (2014 PFD Decision), which was adopted by the Commissioner of Revenue in March 2016. The ALJ concluded that in enacting AS 43.23.008, the legislature had "clarified its intent to make the 30-day requirement inflexible" by "striking" the unavoidable-circumstances exception. The ALJ found that the statute was thus not ambiguous and did not "allow for other factors to mitigate the 30-day requirement." Since it was uncontested that Jones did not satisfy the 30 days/5 years rule, the ALJ found that he had not rebutted the nonresidence presumption and was no longer a state resident for PFD purposes. The 2014 PFD Decision also affirmed the denial of Gwalthney-Jones's 2014 PFD application because, as an accompanying spouse, she was only eligible if Jones was.[11] The ALJ rejected the Joneses' ex post facto challenge and found no conflict in the applicable statutes. The Joneses appealed to the superior court.
2. 2015 PFD applications and administrative proceedings
In March 2015 both spouses applied for 2015 PFDs. The Division denied Jones's 2015 application, reasoning that his "Alaska residency for PFD purposes was previously severed" when he could not rebut the presumption of nonresidence for his 2014 application. The Division, citing AS 43.23.005(a)[12] and *971 15 AAC 23.143(b),[13] stated that Jones "did not return to Alaska to remain indefinitely and re-establish his residency for PFD purposes until November 29, 2014, too late to qualify for the 2015 dividend." The Division also denied Gwalthney-Jones's application, as she had exceeded the allowable absences by being absent for 197 days in 2014 to accompany a spouse who was not eligible for a PFD.[14]
The Joneses requested informal appeals of the 2015 PFD denials. They again listed their ties to Alaska and emphasized that they had returned permanently to the state in November 2014 upon Jones's retirement.[15] The Division, citing AS 01.10.055,[16] AS 43.23.005(a),[17] and former AS 43.23.095(7),[18] denied the informal appeals. It found that Jones "did not return to Alaska prior to January 1, 2014[,] to reestablish [his] residency and eligibility" under the PFD statutes.[19] As to Gwalthney-Jones, the Division found that her 197 days' absence to accompany Jones was "not allowable" because he "was determined not eligible for the 2015 PFD."[20]
The Joneses then requested formal hearings. Jones argued that he had returned to Alaska for a total of 47 days in the five years prior to his 2015 application and thus satisfied the 30 days/5 years rule. The Division countered that he "had previously severed his Alaska residency for PFD purposes," had only reestablished it in November 2014, and was thus not " 'a state resident during the entire qualifying year' when applying for the 2015 PFD."[21]
Following a hearing the ALJ issued a decision and order affirming the denials of the Joneses' 2015 PFDs (2015 PFD Decision). The Commissioner of Revenue adopted the order in August 2016. The 2015 PFD Decision stated that the 2014 PFD Decision had "severed Mr. Jones's residency for PFD purposes prior to January 1, 2014." The ALJ concluded that the parties were bound by the outcome of the 2014 appeal pursuant to the doctrine of collateral estoppel (issue preclusion) and could not relitigate the question of Jones's residency. The ALJ therefore found both spouses ineligible for 2015 PFDs. The Joneses appealed to the superior court.
3. Superior court proceedings
The superior court consolidated the 2014 and 2015 PFD appeals. The Joneses, who by this point had obtained counsel, argued that AS 43.23.008(d) violates the due process, privileges and immunities, and equal protection clauses of the Fourteenth Amendment.[22]
*972 They also argued that it violates article I, section 1 of the Alaska Constitution[23] and that it is an unconstitutional ex post facto law.[24] Finally they asserted that even if the court found AS 43.23.008(d) constitutional, it could award them 2014 and 2015 PFDs through its equitable powers.
The superior court rejected the Joneses' constitutional arguments and declined to exercise its equitable powers to award them PFDs. The court found the Joneses ineligible for 2014 PFDs under a plain reading of the amended statute. It held that the statute did not create an irrebuttable presumption that would violate due process under Vlandis v. Kline ,[25] and that the 30 days/5 years rule was not an "unconstitutional durational residency requirement" under Saenz v. Roe .[26] The court held that the Joneses were not denied equal protection under the Alaska or United States Constitutions and that the statute furthers legitimate state interests. Finally the court found that the statute was not an unconstitutional ex post facto law under Underwood v. State .[27]
The Joneses appeal. They raise constitutional arguments almost identical to those raised before the superior court. They further argue that the statutes and regulations should be interpreted in the light most favorable to them. Finally they request that we use our equitable powers to award them their PFDs even if we find AS 43.23.008(d) constitutional.
III. STANDARD OF REVIEW
"When the superior court acts as an intermediate appellate court, we independently review the merits of the underlying administrative decision."[28] Under de novo review, "[w]e adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[29] When an administrative decision raises an issue of "statutory interpretation involving legislative intent rather than agency expertise, we review that question independently, applying the substitution-of-judgment standard"[30] and adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[31] "However, even under the independent judgment standard [we have] noted that the court should give weight to what the agency has done, especially where the agency interpretation is longstanding."[32] "Constitutional interpretation presents questions of law that are subject to independent review under the de novo standard."[33]
IV. DISCUSSION
A. The Joneses Are Not Eligible For 2014 And 2015 PFDs Based On The Plain Language Of AS 43.23.008(d).
The Joneses raise what seems to be a statutory interpretation argument and assert that we should interpret the PFD statutes and regulations "in the light most favorable"
*973 to them. They do not dispute that Gwalthney-Jones's eligibility depends on Jones's, but they argue that Jones is entitled to 2014 and 2015 PFDs because the legislative intent behind the 2013 statute "was to assist Alaska's career military personnel in proving their intent to remain Alaskans." The Department responds that the Joneses are ineligible for 2014 and 2015 PFDs under the plain language of amended AS 43.23.008.
We have said that "[t]he objective of statutory construction is to give effect to the intent of the legislature, with due regard for the meaning that the statutory language conveys to others."[34] We therefore read "unambiguous statutory language" according to "its ordinary and common meaning" but "look to legislative history as a guide to construing a statute's words."[35] We apply "a sliding scale approach to statutory interpretation, in which 'the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.' "[36]
The text of AS 43.23.008(d) reads:
After an individual has been absent from the state for more than 180 days in each of the five preceding qualifying years, the department shall presume that the individual is no longer a state resident . The individual may rebut this presumption by providing clear and convincing evidence to the department that
(1) the individual was physically present in the state for at least 30 cumulative days during the past five years; and
(2) the individual is a state resident as defined in AS 43.23.295.[37]
The text is clear: an allowably absent individual must be physically present in the state for 30 days in the preceding five qualifying years to be eligible for a PFD.[38] There is no ambiguity about this requirement.
Because the statute is plain and unambiguous, our sliding scale approach places a high burden on the Joneses to show contrary legislative intent to advance a different meaning.[39] The Joneses seem to contend that the 2013 amendments' legislative history supports reading an "unavoidable circumstances" exception into the current statute. They imply that this exception would allow them to qualify for 2014 and 2015 PFDs, just as they did under the Division's pre-2013 regulation.[40]
The legislative history does not support the Joneses' proposed reading of the statute. As part of its 2013 amendments to the PFD statutes, the legislature repealed former AS 43.23.008(c), which had established a cutoff from PFDs after ten years of absences:
An otherwise eligible individual who has been eligible for the immediately preceding 10 dividends despite being absent from the state for more than 180 days in each of the related 10 qualifying years is only eligible for the current year dividend if the individual was absent 180 days or less during the qualifying year.[41]
The legislature repealed this ten-year cutoff shortly after we upheld its constitutionality in Ross v. State, Department of Revenue .[42]
*974 During a hearing on the proposed repeal, the bill's sponsor testified that removing the ten-year cutoff would allow individuals to "pursue a military career and continue to receive" a PFD.[43] But because the State could not "single out a specific class of people [such as career military members] to get ... one benefit or another," the sponsor said the proposed law would verify PFD applicants' "intent to return ... after an allowable absence" by requiring them to rebut a presumption of nonresidence after five years' absence.[44] And by codifying parts of existing regulations into statute, the bill would give "more specific direction to [ALJs]."[45] The Joneses contend that these statements and other hearing testimony demonstrate a legislative intent contrary to the plain text of AS 43.23.008(d) as codified.
The Joneses' argument ignores that the legislature was aware of and chose to omit the previous regulation's "unavoidable circumstances" exception to the 30 days/5 years rule.[46] One goal of the 2013 amendments to the PFD statutes was clearly to enable military members to keep receiving PFDs during allowable absences. But the sponsor's statements suggest that the legislature was also concerned with equal protection, providing clear direction to ALJs in PFD appeals, and ensuring the State's ability to limit PFD eligibility after long periods of absence. The legislative history indicates a balanced consideration of these concerns. As adopted, the 30 days/5 years rule imposes much less onerous demands than the ten-year rule, while still placing limits on allowable absences and providing clear guidance to ALJs.[47] Thus, the legislative history does not support the Joneses' proposed reading of the 30 days/5 years provision as a flexible rather than bright-line rule. The Department properly denied the Joneses' 2014 PFD applications on this ground.
The Joneses argue that there is also some statutory ambiguity as to their residency status for the 2015 PFDs. They assert that following the 2014 PFD proceedings, it was unclear "where [they] fell in the taxonomy of resident, nonresident, or PFD-ineligible resident." But as the ALJ noted, the statute clearly establishes the presumption that Jones was not a resident for PFD purposes if he could not meet both the 30 days/5 years rule and the intent-to-remain element; meeting only the intent-to-remain element was insufficient to rebut the presumption.[48]
The Joneses seem to claim that because of their ties to Alaska, they counted as Alaska residents for PFD purposes and should have had an opportunity to rebut the nonresidence presumption for 2015. But this argument ignores that the legislature is free to impose different residency requirements in different contexts,[49] and that intent to remain is a necessary but not sufficient condition for PFD eligibility.[50] Under AS 43.23.008(d), once the Joneses' residency was severed by the 2014 PFD Decision, they were no longer residents for PFD purposes; under AS 43.23.005(a), they were therefore not eligible for PFDs regardless of whether they could establish residency for other purposes. [51]
*975 They had to reestablish residency for "the entire qualifying year" in order to become eligible again.[52] But they did not return until November 29, 2014-too late to be eligible for 2015 dividends. The Department correctly interpreted and applied the statute in denying their 2015 applications.
B. Alaska Statute 43.23.008(d) Does Not Create An Irrebuttable Presumption Of Nonresidence That Violates Due Process.
The Joneses argue that AS 43.23.008(d) denies them due process under the Fourteenth Amendment because it creates an irrebuttable presumption of nonresidence. The Department counters that the statute, rather than creating an invalid irrebuttable presumption, establishes "merely ... a reasonable, easily administered bright-line rule."
The Joneses rely on the 1973 United States Supreme Court case Vlandis v. Kline[53] to argue that AS 43.23.008(d)(1) is unconstitutional. Vlandis dealt with a Connecticut law that charged higher tuition at its state university system for nonresident students than for residents.[54] The statute defined residency for tuition purposes either by a student's legal address during the year prior to his or her application, if the student was unmarried, or by legal address at the time of application if the student was married.[55] This determination was "permanent and irrebuttable for the whole time that [a] student remain[ed] at the university"; a student could not apply as a nonresident, establish residency while enrolled, and then pay resident tuition.[56]
The Supreme Court invalidated the law, rejecting Connecticut's proffered justifications for its residency classifications.[57] The Supreme Court held that the permanent irrebuttable presumption of nonresidence violated due process "because it provide[d] no opportunity for students who applied from out of [s]tate to demonstrate that they have become bona fide Connecticut residents."[58] But the Court noted that its decision was not meant to deny states the right to impose a "reasonable durational residency requirement" as one element of bona fide residence, provided that students could meet this requirement while they were still students.[59]
Unlike the statute in Vlandis , AS 43.23.008(d) explicitly provides a way to rebut the presumption of nonresidence: a PFD applicant can do so by meeting both the 30 days/5 years requirement and the intent-to-remain requirement.[60] The Joneses argue that it nevertheless "applies a permanent and irrebuttable presumption of nonresidency to those bona fide Alaska residents" who both were absent for more than 180 days in each of the five preceding years and are unable to fulfill the 30 days/5 years rule. The Department responds that AS 43.23.008(d)'s presumption of nonresidence is not permanent.
We agree with the Department. Unlike the students in Vlandis , the Joneses' eligibility for future PFDs is not permanently determined. Each year, they, like other Alaskans, can apply for a PFD; with each application, their eligibility, like that of all Alaskans, is determined anew.[61] Nothing prohibits the State from imposing reasonable residency requirements on individuals seeking to establish bona fide residence.[62] The Supreme Court in Vlandis specifically distinguished Connecticut's statute from a Minnesota law it had previously upheld, which allowed students to qualify for state-resident tuition after being "a bona fide domiciliary of the State for at least a year."[63] The PFD statutes are similar to the Minnesota law:
*976 rather than leaving the Joneses "no opportunity ... to demonstrate that they have become bona fide [Alaska] residents,"[64] the statutes allow them to regain eligibility after one year.[65] The Joneses have done just that, reestablishing residency for the 2015 qualifying year and receiving 2016 PFDs. Because AS 43.23.008(d)'s presumption of nonresidence does not permanently bar applicants from receiving PFDs, it does not create an invalid irrebuttable presumption and does not violate due process.
C. Alaska Statute 43.23.008(d) Does Not Violate The Right To Travel Under The Privileges And Immunities Clause.
The Joneses next argue that AS 43.23.008(d) impermissibly restricts their constitutional right to travel as protected by the Fourteenth Amendment's privileges and immunities clause. Citing Saenz v. Roe[66] and Heller v. State, Department of Revenue ,[67] they contend that AS 43.23.008(d) should be subject to strict scrutiny and that it imposes an unconstitutional durational residency requirement. The Department argues that rational basis review applies under Heller[68] and that AS 43.23.008(d) is valid because it directly advances the legitimate state interests of ensuring only bona fide Alaska residents receive PFD payments and preventing fraud.
Saenz dealt with a California statute that capped welfare benefits for any family that had resided in the state for less than 12 months at the amount payable by the family's previous state of residence.[69] The Supreme Court found that this implicated the right to travel-specifically, the right of "travelers who elect to become permanent residents [of a state] ... to be treated like other citizens of that [s]tate."[70] The Court held that heightened scrutiny applied, rejected California's "entirely fiscal justification" for the durational classification, and invalidated the statute on the ground that the Fourteenth Amendment "does not allow for[ ] degrees of citizenship based on length of residence."[71]
But in Heller we distinguished the PFD program from the welfare benefits at stake in Saenz .[72] Heller involved a constitutional challenge to subsection (b) of AS 43.23.008, which requires PFD applicants to reside in the state for six consecutive months before they can claim an allowable absence.[73] Like the Joneses with the 30 days/5 years rule, Heller characterized the six-month rule as an impermissible durational residency requirement infringing on his right to travel.[74] But we noted that "not all residency requirements are constitutionally infirm."[75] The constitutionality of a residency requirement turns on its purpose-that is, whether it "was designed to establish the bona fides of a person's intent to remain in the state."[76] Thus, requirements aimed at distinguishing residents from nonresidents will more likely *977 pass constitutional muster than those aimed at distinguishing new residents from established ones.[77]
We held that the six-month requirement in Heller was a bona fide residency requirement.[78] It aims to prevent abuse of the PFD program by people who do not intend to stay in Alaska but who may be in the state for just long enough to establish residency.[79] And while Saenz might seem to subject all durational residency requirements to heightened scrutiny, the Supreme Court in fact "carefully distinguished cases ... where the challenged statute is designed to verify bona fide residency."[80] Saenz did not disturb the validity of previous cases applying less stringent standards of review to residency requirements distinguishable from California's.[81]
We therefore held that rational basis review applied to the six-month rule.[82] We noted that PFDs, as "highly portable cash benefit[s]," are "particularly susceptible to passers-through establishing minimal ties to Alaska while intending to reside elsewhere."[83] Under these circumstances we found that six months was not too long a residency requirement to ensure PFD claimants are bona fide residents before they depart the state.[84] We therefore upheld the rule as advancing the legitimate interest of limiting PFD benefits to permanent Alaska residents.[85]
The Joneses argue that the 30 days/5 years rule is not designed to assess bona fide residence based on intent to remain because its physical-presence requirement ignores other evidence of residency-such as the Joneses' ties to the state. But this argument ignores that the State is free to define residency differently for different purposes. The statutes explicitly contemplate this: AS 43.23.295(7)[86] defines a "state resident" for PFD purposes as someone "physically present in the state with the intent to remain indefinitely ... under the requirements of AS 01.10.055." And AS 01.10.055 provides that a person demonstrates the intent to remain "by maintaining a principal place of abode in [Alaska] for at least 30 days or for a longer period if ... required by law or regulation " and "by providing other proof of intent as may be required by law or regulation ."[87] The intent-to-remain requirement is therefore properly applied in conjunction with other PFD-specific residency requirements. And we have held repeatedly that residency requirements for PFD purposes "may differ from other residency requirements"[88] and may include physical-presence *978 requirements[89] and eligibility cutoffs after extended absences.[90]
A physical-presence requirement is a reasonable way to distinguish bona fide residents who are allowably absent from residents of other states who are temporarily living in Alaska-particularly given that "Alaska's economy is a magnet for seasonal workers and other visitors" and the PFD is a portable, once-a-year cash payment.[91] The 30 days/5 years rule is far less burdensome than the previous requirement we upheld in Ross that an applicant must be present in the state for 185 days after a ten-year absence in order to establish PFD eligibility.[92] It requires merely that a PFD applicant be in the state for 30 cumulative days over five years-i.e., that the applicant spend less than 2%-or less than one week a year-of the preceding five years in Alaska. This requirement applies equally to all PFD applicants with prolonged allowable absences; it does not distinguish according to length of residence in Alaska or the applicant's previous state of residence. We therefore conclude that AS 43.23.008(d) does not impose an impermissible durational residency requirement or infringe upon the right to travel under the privileges and immunities clause.
D. Alaska Statute 43.23.008(d) Does Not Violate Equal Protection.
The Joneses argue that AS 43.23.008(d) violates the Alaska Constitution's guarantee of equal rights, opportunities, and protection[93] by denying them an equal opportunity to present evidence of bona fide residence. They also argue that it violates federal equal protection because it fails rational basis review under Zobel v. Williams .[94] The Department responds that AS 43.23.008(d) survives rational basis review and therefore does not violate either state or federal equal protection.
1. Alaska Statute 43.23.008(d) does not violate the Alaska Constitution's equal protection clause.
Article I, section 1 of the Alaska Constitution provides that "all persons are ... entitled to equal rights, opportunities, and protection under the law." Our flexible "sliding scale" test for equal protection claims involves a three-step analysis:
First, we determine what weight should be afforded the constitutional interest impaired by the challenged enactment. The nature of this interest is the most important variable in fixing the appropriate level of review. Second, we examine the purposes served by a challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest. Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken.[95]
The Joneses argue that their PFD claims implicate " 'equal rights' and 'equal opportunities' [that] are broader" than equal protection; they seem to imply that heightened scrutiny applies as a result.
But we have repeatedly noted that the PFD is merely an economic interest that *979 receives minimal scrutiny under our equal protection analysis.[96] We therefore consider only whether the 30 days/5 years rule serves a legitimate governmental objective and whether it bears a fair and substantial relationship to achieving that objective.[97] The Department argues that the statutes governing PFD eligibility serve multiple legitimate purposes: encouraging Alaska residency, reducing population turnover, and encouraging greater awareness and involvement by Alaska residents in the management of the Permanent Fund. The Department further argues that statutes "aimed at improving the efficiency of and simplifying the PFD program" are legitimate.
We agree; AS 43.23.008(d) serves multiple legitimate purposes, including deterring abuse of the PFD program, ensuring that a benefit conferred by the State goes only to bona fide residents, and simplifying the eligibility requirements that ALJs must apply.[98] The "fair and substantial relationship" test does not require a perfect means-to-end fit and does not require the 30 days/5 years rule to be "perfectly fair to every individual to whom it is applied."[99] It is also significant that the burden imposed by the 30 days/5 years rule is minimal.[100] It requires merely that an applicant spend an average of six days per year in Alaska and allows PFD applicants substantial flexibility over how they distribute that time. In this context, we find that the rule bears a sufficient relationship to the aims it serves to satisfy Alaska's equal protection clause.
2. Alaska Statute 43.23.008(d) does not violate federal equal protection.
We have noted that Alaska's substantial relationship standard, the minimum protection we afford in equal protection claims, requires a closer means-to-end fit than federal rational basis review.[101] The Joneses nevertheless argue that the 30 days/5 years rule violates federal equal protection under Zobel v. Williams .[102] That case applied rational basis review to a PFD distribution scheme that based individuals' dividend amounts on the length of each individual's state residence.[103] The State advanced three purposes for the statute: first, to create an incentive for people to establish and maintain Alaska residency; second, to encourage "prudent management of the Permanent Fund"; and third, to award benefits based on "contributions ... residents have made during their years of residency."[104] The Supreme Court found that the first two objectives were not rationally related to the statute's distinctions between newer and older residents,[105] and that the third objective was not a legitimate state purpose.[106] It therefore held that the statute violated the Fourteenth Amendment's equal protection clause under rational basis review.[107]
*980 Alaska Statute 43.23.008(d) is easily distinguished from the statute at issue in Zobel. It makes no distinctions based on length of residence. Rather, it imposes equally on all residents a requirement that they maintain minimal physical presence in Alaska if they are claiming extended allowable absences.[108] It is sufficiently related to the ends it serves to survive an equal protection challenge under our substantial relation test and is therefore valid under federal rational basis review as well.[109]
E. Alaska Statute 43.23.008(d) Is Not An Unconstitutional Ex Post Facto Law.
The Joneses argue that the 30 days/5 years rule is an unconstitutional ex post facto law. Relying on Underwood v. State , they argue that we should apply a "fairness and reasonableness" test and find that the statute "unfairly impinges upon their settled expectations."[110] The Department responds that the 2013 amendments merely codified existing regulations, albeit without the "unavoidable circumstances" exception; the Department further argues that because the legislature explicitly stated that AS 43.23.008(d) would not affect eligibility for 2013 PFDs, it did not "unfairly or unreasonably impinge upon any property rights or settled expectations."[111]
The Joneses' ex post facto argument lacks merit; the prohibition on ex post facto laws is irrelevant here. Since Underwood we have clarified that the state and federal ex post facto clauses apply only to penal statutes:
Ex post facto prohibitions "bar the legislature from enacting any law that punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with a crime of any defense available according to law at the time when the act was committed."[112]
The legislature in passing AS 43.23.008(d) did not criminalize a previously lawful act, retroactively increase a sentencing range, or deprive anyone facing criminal prosecution of a defense; it merely adjusted eligibility requirements for an economic benefit conferred by the State.[113] The bar on ex post facto laws therefore has no bearing on the purely civil PFD claims raised here.
F. Our Equitable Powers Do Not Extend To Awarding PFDs In Contravention Of A Valid, Unambiguous Statute.
The Joneses, citing AS 22.05.020, finally exhort us to use our equitable powers to award them 2014 and 2015 PFDs.[114] The Department responds that doing so would improperly ignore laws that the legislature *981 validly enacted after extensive public comment and debate, and that granting the Joneses a "special, non-statutory exception" would frustrate the PFD program's goal of equitably distributing part of the state's energy wealth according to consistent eligibility requirements.
Our equitable powers do not go so far as to authorize us to directly contravene statutes passed by the legislature. Alaska Statute 22.05.020(b) empowers us to execute our judgments "according to ... the laws of the state"; it gives us no power to issue judgments despite those laws, as the Joneses ask us to do.[115] The Alaska Constitution provides for the separation of powers, vesting "legislative power in the legislature; executive power in the governor; and judicial power" in the courts.[116] The legislature duly enacted AS 43.23.008(d) ; the executive, in this case the Department, enforced it. Given that we find AS 43.23.008(d) constitutional, we will not encroach on the roles of the other branches of government by awarding the Joneses PFDs for which they are not eligible under the statute.
V. CONCLUSION
Because AS 43.23.008(d) is unambiguous, was not misapplied by the Department, and does not violate either the Alaska or the United States Constitution, and because we decline to exercise our equitable powers in contravention of a duly enacted statute, we AFFIRM the Department's denials of the Joneses' applications for 2014 and 2015 PFDs.

AS 43.23.008(a) provides:
Subject to (b) and (d) of this section, an otherwise eligible individual who is absent from the state during the qualifying year remains eligible for a current year permanent fund dividend if the individual was absent
....
(3) serving on active duty as a member of the armed forces of the United States or accompanying, as that individual's spouse, ... an individual who is
(A) serving on active duty as a member of the armed forces of the United States; and
(B) eligible for a current year dividend.
The accompanying-spouse provision was added to subsection (a)(3) in 2003, but was previously available to Gwalthney-Jones under a different subsection of the same statute. See Ch. 69, § 1, SLA 2003; former AS 43.23.008(a)(13) (2002).

See AS 43.23.295(6) (" '[Q]ualifying year' means the year immediately preceding January 1 of the current dividend year."). Former AS 43.23.095, the definitional statute in place at the time of the Joneses' PFD applications and appeals, was renumbered as AS 43.23.295 in 2018. Revisor's notes, AS 43.23.295.

AS 43.23.008(d) ; ch. 33, § 2, SLA 2013.

Ch. 33, § 5, SLA 2013.

Id. ; see former 15 AAC 23.163 (am. 1/1/99).

Former 15 AAC 23.163 (2012).

AS 43.23.008(d).

See AS 43.23.008(a)(3) (requiring that the active-duty servicemember whom the applicant is accompanying be "eligible for a current year dividend").

See 15 AAC 05.030(h) ("[T]he person requesting the [formal] hearing has the burden of proving that the [challenged] action by the department ... is incorrect.").

They specifically claimed that AS 43.23.008(d) conflicted with AS 43.23.005(a)(4), which provides that an individual must have "been physically present in the state for at least 72 consecutive hours at some time during the prior two years before the current dividend year" to be eligible for a PFD. The Joneses do not raise this argument on appeal, so we note only that the 72-hour requirement being a necessary condition of PFD eligibility does not mean that it is a sufficient condition; the legislature is free to impose additional requirements.

See AS 43.23.008(a)(3).

AS 43.23.005(a) provides:
An individual is eligible to receive one [PFD] each year ... if the individual
....
(2) is a state resident on the date of application;
(3) was a state resident during the entire qualifying year;
....
(6) was, at all times during the qualifying year, physically present in the state or, if absent, was absent only as allowed in AS 43.23.008.

15 AAC 23.143(b) provides that "[a]n individual may not become a resident while absent from Alaska."

The Division found that Gwalthney-Jones had been absent for 19 days to assist a family member receiving care for a life-threatening illness-allowable under AS 43.23.008(a)(6) -and for 197 days "to accompany her ineligible military spouse." This exceeded the 45 days' absence she was allowed to claim in addition to her absence under AS 43.23.008(a)(6). See AS 43.23.008(a)(17)(C).

While Jones's retirement from the military did not take effect until January 1, 2015, he was on terminal leave in Anchorage beginning November 29, 2014.

AS 01.10.055(a) provides that "[a] person establishes residency in the state by being physically present in the state with the intent to remain ... indefinitely and to make a home in the state." The required intent may be shown "by maintaining a principal place of abode in the state for at least 30 days"-or longer if required by law or regulation-and providing other proof of intent if required by law or regulation. AS 01.10.055(b). A person retains state residency during an absence unless that person "establishes or claims residency" elsewhere or "is absent under circumstances that are inconsistent with" the required intent. AS 01.10.055(c).

See AS 43.23.005(a)(2), (3), (6).

Former AS 43.23.095(7) (renumbered as AS 43.23.295(7) ) defined a "state resident" as "an individual who is physically present in the state with the intent to remain indefinitely ... or, if the individual is not physically present in the state, intends to return to the state and remain indefinitely" pursuant to AS 01.10.055. See Revisor's notes, AS 43.23.295(7).

See AS 43.23.005(a)(3).

See AS 43.23.008(a)(3)(A)-(B) & (17)(C).

See AS 43.23.005(a)(3).

The Fourteenth Amendment states: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Alaska Const. art. I, § 1 provides: "[A]ll persons are equal and entitled to equal rights, opportunities, and protection under the law."

See U.S. Const. art. I, § 10, cl. 1 ("No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts."); Alaska Const. art. I, § 15 ("No bill of attainder or ex post facto law shall be passed.").

412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).

526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).

881 P.2d 322 (Alaska 1994).

Heller v. State, Dep't of Revenue , 314 P.3d 69, 72 (Alaska 2013) (citing State, Pub. Emps.' Ret. Bd. v. Morton , 123 P.3d 986, 988 (Alaska 2005) ).

Id. at 72-73 (citing State v. Native Vill. of Tanana , 249 P.3d 734, 737 (Alaska 2011) ).

Morton , 123 P.3d at 988 (quoting Alaska Ctr. for the Env't v. Rue , 95 P.3d 924, 926 (Alaska 2004) ).

Chugach Elec. Ass'n v. Regulatory Comm'n of Alaska , 49 P.3d 246, 249 (Alaska 2002) (quoting Cook Inlet Pipe Line Co. v. Alaska Pub. Utils. Comm'n , 836 P.2d 343, 348 (Alaska 1992) ).

Id. at 250 (alteration in original) (quoting Nat'l Bank of Alaska v. State, Dep't of Revenue , 642 P.2d 811, 815 (Alaska 1982) ).

Heller , 314 P.3d at 73 (citing Eagle v. State, Dep't of Revenue , 153 P.3d 976, 978 (Alaska 2007) ; State v. Planned Parenthood of Alaska , 171 P.3d 577, 581 (Alaska 2007) ).

Heller , 314 P.3d at 74 (quoting City of Dillingham v. CH2M Hill Nw., Inc. , 873 P.2d 1271, 1276 (Alaska 1994) ).

Id. (citing CH2M Hill Nw., Inc. , 873 P.2d at 1276 ).

Municipality of Anchorage v. Stenseth , 361 P.3d 898, 905 (Alaska 2015) (quoting McDonnell v. State Farm Mut. Auto Ins. Co. , 299 P.3d 715, 721 (Alaska 2013) ).

AS 43.23.008(d) (emphasis added).

AS 43.23.008(d). We note that the 2014 PFD Decision found-and the Department does not dispute-that Jones could and did satisfy the statute's second requirement, qualifying as a resident under the former AS 43.23.095 based on his intent to return to Alaska. But AS 43.23.008(d) requires an applicant to satisfy both requirements to rebut the presumption of nonresidence for PFD purposes.

See Stenseth , 361 P.3d at 905.

See former 15 AAC 23.163(h)(2) (2012).

Ch. 33, § 3, SLA 2013.

292 P.3d 906, 912-14 (Alaska 2012). Ross, a Marine Corps officer, was denied a 2009 PFD based on the ten-year provision because his military career had kept him out of state. Id. at 908. Following our decision upholding the denial, he testified before the legislature in support of repealing the ten-year cutoff and replacing it with the current version of AS 43.23.008(d). Testimony of Brian Ross at 8:37:34, Hearing on H.B. 52 Before the H. State Affairs Standing Comm., 28th Leg., 1st Sess. (Jan. 29, 2013).

Testimony of Rep. Eric Feige at 8:39:38, Hearing on H.B. 52 Before the H. State Affairs Standing Comm., 28th Leg., 1st Sess. (Jan. 29, 2013).

Id .

Id. ; see former 15 AAC 23.163(h)(2) (2012).

Compare former 15 AAC 23.163(h)(2) (2012)with AS 43.23.008(d).

Compare former AS 43.23.008(c) (2012) (requiring individual to be physically present in state for at least 185 days of qualifying year to be eligible after ten consecutive years of extended absences), with AS 43.23.008(d) (requiring only 30 days of physical presence spread out over five years to qualify after five consecutive years of extended absences).

AS 43.23.008(d).

See AS 01.10.055(b) (providing that person seeking to demonstrate intent to remain may, if "required by law or regulation," have to maintain principal place of abode in Alaska for longer than default 30 days or provide additional proof of intent); see also Heller v. State, Dep't of Revenue , 314 P.3d 69, 81 (Alaska 2013) ("[T]he residency requirement for PFD eligibility may differ from other residency requirements." (quoting Schikora v. State, Dep't of Revenue , 7 P.3d 938, 942 (Alaska 2000) )).

See AS 43.23.005(a)(1)-(7) (listing PFD eligibility requirements including but not limited to state residence).

See AS 43.23.005(a)(3) ; AS 43.23.008(d).

AS 43.23.005(a)(3).

412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).

Id. at 442, 93 S.Ct. 2230.

Id. at 442-43, 93 S.Ct. 2230.

Id. at 443, 93 S.Ct. 2230.

Id. at 448-53, 93 S.Ct. 2230.

Id. at 453, 93 S.Ct. 2230.

Id. at 452, 93 S.Ct. 2230.

AS 43.23.008(d).

See AS 43.23.005(a) (setting eligibility requirements to receive a PFD "each year").

See Vlandis , 412 U.S. at 452, 93 S.Ct. 2230.

Id. at 452 n.9, 93 S.Ct. 2230 (citing Starns v. Malkerson , 401 U.S. 985, 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), summarily aff'g 326 F.Supp. 234 (D. Minn. 1970) ).

Id. at 453, 93 S.Ct. 2230.

See AS 43.23.005(a)(3) (requiring an individual to have been "a state resident during the entire qualifying year" to be eligible for a PFD); AS 01.10.055(a) (providing that a person establishes Alaska residency "by being physically present in the state with the intent to remain ... indefinitely").

526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).

314 P.3d 69 (Alaska 2013).

Id. at 82.

Saenz , 526 U.S. at 492, 119 S.Ct. 1518.

Id. at 500, 502, 119 S.Ct. 1518.

Id. at 504, 506, 119 S.Ct. 1518.

Heller , 314 P.3d at 79 (citing Saenz , 526 U.S. at 505, 119 S.Ct. 1518 ).

Id. at 77 ; AS 43.23.008(b).

Heller , 314 P.3d at 77. Heller grounded his right-to-travel claim on equal protection rather than the privileges and immunities clause. Id. But on at least one occasion we have suggested that a privileges-and-immunities challenge to a physical-presence requirement for the PFD would be "unavailing." Schikora v. State, Dep't of Revenue , 7 P.3d 938, 946 n.30 (Alaska 2000) (addressing the 180-day limit on absences in the qualifying year and noting that any "burden" of physical presence was "borne equally by all [PFD] applicants, regardless of ... previous state citizenship").

Heller , 314 P.3d at 78.

Id.

See id. (citing Williams v. Zobel , 619 P.2d 448, 451 n.7 (Alaska 1980) ).

Id. at 81-82.

Id. at 80.

Id. at 82 (citing Saenz v. Roe , 526 U.S. 489, 505, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999) (declining to consider "what weight might be given to a citizen's length of residence if the bona fides of her claim to state citizenship were questioned")).

See, e.g. , Sosna v. Iowa , 419 U.S. 393, 409-10, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (upholding as reasonable Iowa's one-year residency requirement for filing a divorce action); Vlandis v. Kline , 412 U.S. 441, 452, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (noting that Court's invalidation of Connecticut's residency-based tuition scheme did not prohibit states from imposing, "as one element in demonstrating bona fide residence, a reasonable durational residency requirement"); Starns v. Malkerson , 326 F. Supp. 234, 238-41 (D. Minn. 1970) (applying rational basis review to uphold one-year residency requirement for in-state tuition), aff'd summarily by Starns v. Malkerson , 401 U.S. 985, 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971).

Heller , 314 P.3d at 82.

Id. at 79. The Supreme Court in Saenz acknowledged the relevance of this kind of susceptibility: it specifically distinguished welfare benefits, which would be consumed within California, from a "readily portable benefit" that might attract claimants from out of state with questionable bona fides of residency. Saenz , 526 U.S. at 505, 119 S.Ct. 1518.

Heller , 314 P.3d at 80.

Id. at 82 & n.72.

Formerly AS 43.23.095(7), renumbered as AS 43.23.295(7) in 2018. See Revisor's notes, AS 43.23.295.

AS 01.10.055(b)(1)-(2) (emphasis added).

Heller , 314 P.3d at 81 (quoting Schikora v. State, Dep't of Revenue , 7 P.3d 938, 942 (Alaska 2000) ); accord Church v. State, Dep't of Revenue , 973 P.2d 1125, 1129 (Alaska 1999) (quoting Brodigan v. State, Dep't of Revenue , 900 P.2d 728, 733 n.12 (Alaska 1995) ).

See Schikora , 7 P.3d at 944-45 (upholding rule requiring PFD claimants to be physically present in state for at least 185 days during qualifying year).

See Ross v. State, Dep't of Revenue , 292 P.3d 906, 913-14 (Alaska 2012) (upholding former AS 43.23.008(c)'s rule cutting off PFD eligibility after ten consecutive years with more than 180 days' absence in each year).

Heller , 314 P.3d at 79-80 ; see also State of Alaska, Dep't of Labor & Workforce Dev., Nonresidents Working in Alaska : 2017 1 (2019), http://live.laborstats.alaska.gov/reshire/nonres.pdf (finding that nonresidents accounted for 20.9% of Alaska workers).

See former AS 43.23.008(c) (requiring applicant be physically present in Alaska for at least 185 days during qualifying year if applicant had been absent for more than 180 days in each of the preceding ten years); Ross , 292 P.3d at 908, 913-14.

Alaska Const. art. I, § 1.

457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982).

Ross , 292 P.3d at 909-10 (quoting Harrod v. State, Dep't of Revenue , 255 P.3d 991, 1001 (Alaska 2011) ).

Heller , 314 P.3d at 83 (citing Church v. State, Dep't of Revenue , 973 P.2d 1125, 1130 (Alaska 1999) ); accord Ross , 292 P. 3d at 910 (quoting Harrod , 255 P.3d at 1001 ).

See Ross , 292 P.3d at 910 ; Church , 973 P.2d at 1130 (quoting Underwood v. State , 881 P.2d 322, 325 (Alaska 1994) ).

See Testimony of Rep. Eric Feige at 8:39:38, Hearing on H.B. 52 Before the H. State Affairs Standing Comm., 28th Leg., 1st Sess. (Jan. 29, 2013).

Ross , 292 P.3d at 910 (quoting Harrod , 255 P.3d at 1001 ).

See Heller , 314 P.3d at 83 ("[T]hat the PFD is an economic interest that does not usually warrant strict scrutiny ... is not the only factor in the analysis. It is important that the burdens on the alleged rights in this case are minimal.").

See, e.g. , Matanuska-Susitna Borough School Dist. v. State , 931 P.2d 391, 402 (Alaska 1997).

457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982).

Id. at 56, 102 S.Ct. 2309. The statute awarded PFD recipients one "dividend unit for each year of residency subsequent to 1959, the first year of statehood." Id. at 57, 102 S.Ct. 2309.

Id. at 61, 102 S.Ct. 2309 (internal quotations omitted).

Id.

Id. at 63, 102 S.Ct. 2309 (citing Shapiro v. Thompson , 394 U.S. 618, 632-33, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (rejecting a similar "past contributions" rationale for differential welfare benefits), overruled in part on other grounds by Edelman v. Jordan , 415 U.S. 651, 670-71, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ).

Id. at 65, 102 S.Ct. 2309.

AS 43.23.008(d)(1).

See Stanek v. Kenai Peninsula Borough , 81 P.3d 268, 272 (Alaska 2003) ("[A]nalysis of equal protection claims under the federal constitution is, if anything, more forgiving than the approach we use under the ... Alaska Constitution.").

See Underwood v. State , 881 P.2d 322, 327-28 (Alaska 1994). In that case we upheld a 1992 amendment to the PFD statutes requiring applicants for 1993 PFDs to show Alaska residency as of January 1, 1992. Id. The previous statute had required residency as of April 1, 1992; the Underwoods moved to Alaska in March 1992, expecting to qualify for the 1993 PFD, and raised an ex post facto challenge when they did not qualify. Id. at 324. Applying a "vested rights" analysis, we found that no Alaskan, let alone the Underwoods, had a vested right to a 1993 PFD as of March 1992. Id. at 327 ; see also Church v. State, Dep't of Revenue , 973 P.2d 1125, 1131 (Alaska 1999) ("An applicant has no vested property right in a [PFD] and should not expect to receive a dividend if he doesn't meet the qualifications."). We also found that even if the proposed "fairness and reasonableness" test were applied, the Underwoods would not qualify for 1993 PFDs. Underwood , 881 P.2d at 327-28.

Underwood , 881 P.2d at 328.

Pfeifer v. State, Dep't of Health &Soc. Servs., Div. of Pub. Assistance , 260 P.3d 1072, 1081 n.43 (Alaska 2011) (quoting Doe v. State , 189 P.3d 999, 1003 (Alaska 2008) (internal quotations omitted)); accord Dobbert v. Florida , 432 U.S. 282, 292, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

AS 43.23.008(d) ; ch. 33, § 2, SLA 2013.

AS 22.05.020(b) provides: "The supreme court is vested with all power and authority necessary to carry into complete execution all its judgments, decrees, and determinations in all matters within its jurisdiction, according to the constitution, the laws of the state, and the common law."

Id. (emphasis added).

Alaska Pub. Interest Research Grp. v. State , 167 P.3d 27, 35 (Alaska 2007).